State ex rel. Newman vs. Burke, Treasurer, et al.

No. 8350.

THE STATE OF LOUISIANA EX REL. ISIDORE NEWMAN VS. E. A. BURKE, TREASURER, ET AL.

P. O. FAZENDE AND JOHN ELLIOTT ET AL., INTERVENORS.

A writ of error, though operating as a supersedeas, does not have the effect of reviving or continuing in force the injunction dissolved by the judgment from which such writ of error has been obtained.

But it is also the rule, based upon a principle of comity, that the court from whose judgment the supersedeas has been taken, should not render any decree during the pendency of said supersedeas, which would practically destroy its effects.

Therefore, this Court will not, in the present case and at the instance of the relator, order the payment of an entire fund to him, whilst other parties are also claiming payment out of it, in the Supreme Court of the United States, under a writ of error to this Court, which operated as a supersedeas.

The principles upon which the decision of this Court is based in the Hart case are formulated anew in this case.

APPEAL from the Civil District Court for the Parish of Orleans. *Tissot*, J.

*Kennard, Howe & Prentiss* and *E. D. White* for the Relator and Appellant.

*W. S. Benedict* for P. O. Fazende, Intervenor and Appellee.

*Lacey & Butler* for John Elliott, Intervenor and Appellee.

*J. McConnell* for the State National Bank, Defendant and Appellee.

The opinion of the Court was delivered by

FENNER, J. The relator represents that he is holder of warrants on the general fund of the State for the years 1880 and 1881 ; that under the constitutional debt ordinance of 1879, the interest taxes collected to meet the coupons of the consolidated bonds falling due on January 1st, 1880, were transferred to defray the general expenses of the State, and are now a part of the general fund for the payment of said

expenses ; that the said fund, as thus constituted, is ample, and much more than sufficient to pay his said warrants, which, under Act 71 of 1880, are lawfully entitled to be paid out of the same ; that it' is the ministerial duty of defendants to transfer said monies to the general fund and to pay the warrants held by him out of the same ; but that notwithstanding due demand they refuse to perform the said duties ; and he, therefore, prays for a writ of mandamus to compel them to do so.

The defendants, viz : the Treasurer, the Auditor and the Fiscal Agent of the State, answer, denying the existence of the ministerial duties charged, and especially averring that in the suits of State ex rel. Hart vs. E. A. Burke, Treasurer, et al., and of S. J. Hart vs. E. A. Burke, Treasurer, et al., a claim is made against them for the payment out of said fund, of interest coupons on consolidated bonds due January 1st, 1880, to the amount of $75,000, and that an injunction was issued restraining them from appropriating said funds as directed by the constitutional debt ordinance ; and that although, under the decree of this Court in said cases, the claim of said Hart was rejected and the injunction obtained by him was dissolved, yet that said Hart had obtained a writ of error, with supersedeas, from the Supreme Court of the United States to this Court in said suits, and that the same are now pending undetermined in the said Supreme Court of the United States.

P. O. Fazende, as the holder of certain coupons of interest on consolidated bonds maturing January 1st, 1880, intervened in this suit and prayed for judgment rejecting the demand of the relator, and ordering the defendants to pay to him, out of the fund referred to, the amount due on his said coupons.

John Elliott and others, citizens of New York, filed another intervention, as holders of similar interest coupons, averring that they had brought suit in the late Third District Court for the Parish of Orleans, for a mandamus to compel the defendants to pay their said coupons out of the same fund, and otherwise to execute and carry out the funding Act of 1874, which suit was removed to the Circuit Court of the United States, and, after decision there, was carried by writ of error to the Supreme Court of the United States, where the same is now pending undecided ; and praying for judgment rejecting the demand of the relator, and enjoining and restraining the defendants from paying or applying any portion of said fund to any other purpose than the payment of interest coupons on the consolidated debt.

Upon proper issues formed, judgment was rendered by the lower court in the following terms : " It is ordered that there be judgment in favor of defendants and intervenors, and that the petition for mandamus made by relator be dismissed."

State ex rel. Newman vs. Burke, Treasurer, et al.

We are surprised to find from statements in briefs of counsel, and indeed from statements in the petitions of appeal filed by the defend-ants, that this judgment is interpreted as importing a decree in favor of the intervenors and against the defendants, granting the former the relief prayed for in their interventions. We have searched the record in vain for any other judgment than the one above quoted; which is accompanied by no written reasons explanatory thereof.

Certainly it does not admit of the interpretation above suggested. No judgment whatever is rendered against the defendants, and on the contrary, an unqualified judgment is rendered in their favor.

The judgment can mean nothing else than that, while refusing any affirmative relief sought by intervenors, as against the defendants, it is in their favor as well as in favor of defendants, in so far as they join in resisting the demand of the relator, which the judgment rejects.

Adhering to the views expressed by us in the case of Hart vs. Burke, 33 An. 498, it is clear that the exception filed by relator and defend-ants to the intervention of Fazende should have been maintained and his intervention should have been dismissed. We there held that Hart, who stood in identical case with this intervenor, could neither claim judicial enforcement of his own alleged rights upon this fund, nor prevent the State officers from disposing of them as directed by the State. He has no right to interfere with the disposition of a fund, in which he has no interest susceptible of judicial cognizance or enforce-ment. The like fate would necessarily attend the intervention of Elliott and others, unless saved by the allegations therein contained touching the pendency of their prior suit to subject the very fund here in controversy to the satisfaction of the claims set forth in their petition.

This raises a serious and delicate question of comity of courts, iden-tical in character with that presented in the plea of the defendants setting up the continued pendency of the Hart suits under the writ of error from the Supreme Court of the United States to this Court.

So far as the injunction of Hart is concerned, the authorities seem to be quite clear that the writ of error, though operating as a superse-deas, did not have effect to revive or continue in force the injunction which had been dissolved by our decree. Slaughterhouse Cases, 10 Wall. 274; Wood vs. Dwight, 7 Johns. Ch. 295; High on Inj. § 893 and authorities there cited.

The fact remains, nevertheless, that, in his mandamus proceeding, Hart sought the judicial enforcement of his alleged right to have his coupons satisfied out of the particular fund from which the relator in the present suit seeks to have his own claims paid; and that, although we decided adversely to Hart's right, our decision thereon is not final,

but his case has been carried, on writ of error, to the Supreme Court of the United States, where it is still pending, and abides the final determination of that Court.

So, before the institution of the present proceeding, Elliott et al. had brought their suit before a court of competent jurisdiction to subject the same fund to the satisfaction of their claims, and though the Judge of the United States Circuit Court denied their demand, as we did in the Hart case, yet they, in like manner, have appealed to the United States Supreme Court, in which their cause is still pending.

It is manifest that if we, at the suit of creditors like the relator, should order the payment of this entire fund to them, the effect would be to nullify and destroy the remedial power of the Supreme Court of the United States, and to render its decrees nugatory in controversies upon which its jurisdiction had attached, before the institution of relator's proceeding. This would operate practically to defeat its jurisdiction and take away the right of these parties to prosecute their suits to any useful or effective purpose.

It has been said by the Supreme Court of the United States; "it is a doctrine of law too well established to require citation of authorities, that where a court has jurisdiction, it has a right to decide every question which occurs in the cause; and that where the jurisdiction of a court and the right of the plaintiff to prosecute his suit in it, have once attached, that right cannot be arrested or taken away by proceedings in another court. These rules have their foundation not merely in comity, but on necessity." Peck vs. Jenness, 7 How. 612.

And the same Court has said : "It forms a recognized portion of the duty of this Court to give preference to such principles and methods of procedure as shall serve to conciliate the distinct and independent tribunals of the States and of the Union, so that they may co-operate as harmonious members of a judicial system co-extensive with the United States, and submitting to the paramount authority of the same Constitution, laws and federal obligations." Taylor vs. Carryl, 20 How. 595; see also, Hagan vs. Lucas, 10 Pet. 401 ; Taylor vs. Taintor, 16 Wall. 370 ; New Orleans vs. Steamship Co., 20 Wall. 392.

These principles have usually been invoked in cases of conflicting seizures of property, but we can discover nothing to prevent their application to cases like the instant ones, involving the disposition of a particular fund, claimed under contradictory titles, and especially where the fund is so situated as not to be susceptible of being taken into judicial custody by any remedial process.

When our attention is properly called, in such a case, to the pendency of prior judicial proceedings in a court of competent co-ordinate or appellate jurisdiction, asserting claims on a fund so situated, we

feel bound to respect the jurisdiction over the *res* so acquired, and to abstain from doing anything to defeat that jurisdiction in subsequent proceedings before our own courts.

We, therefore, hold that Elliott et al. had a proper standing in court, under their intervention, for the purpose of informing the court of the pendency and nature of their proceedings in the courts of the United States against this fund, and of asking that it should do nothing in this suit to impair or destroy their rights and remedies under said proceedings.

The defendants had an equal right to plead, as a defense, the pendency of the Hart suit, and, indeed, it was clearly the part of prudence for them to do so, in order to avoid questions of responsibility in case of conflicting decrees in the several suits against them.

Having thus settled the principles by which we should be guided, it remains to determine whether the allowance of relator's demand herein would, in any manner, jeopardize, or interfere with, the payment of the claims of Hart or of Elliott et al. out of this fund, in case they should recover judgments to that effect in their pending suits. This record informs us that the fund under control of defendants, out of which these several parties claim satisfaction, exceeds three hundred and sixty thousand dollars. Hart's claim amounts to seventy-five thousand dollars. That of Elliott et al. amounts to seventy-eight thousand dollars, making a total of one hundred and fifty-three thousand dollars, and leaving a sum exceeding two hundred thousand dollars, not in any manner claimed or necessary for the satisfaction of any judgment which they may recover.

The claim of the relator is for the sum of $79,833.29.

We can perceive no possible reason, under these circumstances, why we may not proceed to adjudicate the claim of relator without in any manner affecting the rights of Hart and of Elliott et al. in their pending suits.

Is the relator entitled to the relief asked in his petition?

The terms of the constitutional debt ordinance expressly direct the fund in controversy to be " transferred to defray the expenses of the State government." Sec. 3. The legislature of the State subsequently passed Act No. 71 of 1880, entitled, " An Act making appropriations to defray the ordinary expenses of the State government,  *  *  for the year ending December 31st, 1880, and for the year ending December 31st, 1881." These appropriations were, by the terms of the Act, payable out of the general fund, to which, under the direction of the constitutional debt ordinance, the fund in controversy was transferred. Relator, it is admitted, is the holder of warrants issued under the Act

71 of 1880, for expenses of the State government, and payable out of said general fund.

No defense is made except the denial that the duties, the performance of which is demanded, are ministerial duties. What are those duties? They are:

*First.* That the State Auditor and Fiscal Agent should conform their books to the requirements of the constitutional ordinance, by transferring the monies referred to therein to the credit of the general fund.

Unless they are to disobey the mandate of the sovereign, such is their plain duty, and it is obviously ministerial.

*Second.* That the Treasurer should give checks upon the Fiscal Agent for the amount of the warrants held by him.

It is averred and not denied, that there is in the treasury, belonging to the general fund, "ample funds to pay all outstanding and unpaid warrants thereon, for said years 1880 and 1881."

Such being the case, we can conceive of no clearer duty than that of the Treasurer to pay these admitted valid warrants. We can find no possible reason for refusing the relief sought by relator.

It is the legitimate and logical sequence of our decision in the Hart case.

We would gladly leave this fund untouched, to abide the final determination of the interests of all parties, but our clear duty is to decide causes as they arise and according to the law as we interpret it, and without ourselves reversing our opinion in the Hart cases, we cannot deny to relator the relief asked by him.

That case was, and is regarded by us as involving by far the most important questions ever presented to us for determination. Our decision therein was rendered upon the most mature consideration, and has been, ever since, the subject of our constant thought and research. The result has been to confirm and strengthen our conviction of its correctness.

The briefs filed by the learned counsel for Elliott et al., form a valuable thesaurus of authorities upon questions of law never disputed by this Court, but which are in no manner germane to the Hart case. As the same questions are involved in this case, and as the argument exhibits such a misunderstanding of the principles on which our decision rests, we feel impelled to formulate them anew, lest the misconstruction may be attributable to some obscurity in our opinion. They are as follows:

1. The fund in controversy is composed of monies derived from taxes levied by the State, payable to the State, collected by the State, and now held and possessed by the State, in her own treasury.

2. The claim of Hart was a claim against the State, founded on a contract of the State, demanding payment out of monies belonging to and in possession of the State.

3. The State possesses an absolute immunity from suit in her own tribunals, and no court has power to compel her, against her will, to perform any obligation of her contracts without reference to the nature thereof.

4. The defendants in the case were officers of the State, sued alone in their capacities as such, and had no relation to or power over the fund in controversy excepting as officers of the State. They were not individual trustees, and to say that as officers they held these funds in trust, (even if that were true) is simply another form of words for saying that the State held them in trust. But the State can be no more compelled judicially to execute a trust than to perform any other obligation whatever.

5. As the State, directly, could not be judicially compelled to perform her contract, neither could her officers be judicially compelled to perform it for her against her will. A State is an intellectual being incapable of acting or being acted upon except through her officers. If the State were amenable to suit she could only stand in judgment through her officers, and judicial compulsion could only be brought to bear upon her through them. If her officers may be compelled to perform her contracts against her will, by proceedings directed against them, it is clear that her immunity from suit, instead of being a substantial sovereign right, would be but an empty sham—a pretense, a mockery.

6. The writ of mandamus (when directed to State officers) is an order issued in the name of the State to compel them to perform some duty imposed upon them by the State; in other words, to execute the will of the State.

7. When a mere legislative prohibition is set up by officers of the State as an excuse for non-performance of duties which had been imposed upon them by the will of the State, and which, but for said prohibition would continue to exist, inquiry is proper to ascertain which is the will of the State, the antecedent law imposing the duty, or the subsequent legislative act revoking it. Legislatures exercise only delegated powers and their acts are only acts of the State when within the scope of said powers. If, therefore, the subsequent act be discovered to be beyond those powers, because in violation of the Constitution of the State or of the United States, it is not the act, nor expressive of the will of the State; and that will, as expressed in the prior valid act, must be executed.

8. But the State herself, in framing her own organic law, exercises

no delegated powers. Her will, as expressed therein, is absolutely and unequivocally her own original and independent will. The judiciary has power, in proper cases, to disregard and set aside that will on the ground that it violates the Constitution of the United States by impairing the obligation of a contract; but that power only exists as an incident to the right and duty of a court to enforce the particular contract by reason of jurisdiction acquired over the subject matter thereof and over the parties thereto. Familiar instances of the exercise of such power are presented in proceedings against municipal and other subordinate political corporations, which are amenable to suit and subject to judicial control, precisely like private persons. Inasmuch as no court can ever acquire jurisdiction over a State or to enforce a contract of the State against her will, it follows that no court can ever have power to decree the invalidity of any provision of the State Constitution on the ground that it impairs the obligation of such a contract. But unless the court may decree the nullity of such a provision on such a ground, it follows that it cannot compel the officers of the State to do anything in violation thereof, because the Constitution of the State is their exclusive mandate and absolutely binding on them.

9. Hart was, therefore, without right to demand judicial aid to compel the officers of the State to do that which the State forbade them to do; and the courts were powerless to grant such relief.

10. Admitting, *argumenti gratiâ*, that the denial of mandatory relief does not necessarily exclude the right to relief by injunction, yet Hart's right to an injunction to restrain the officers of the State from applying the funds in controversy to other purposes than those to which he claimed they were applicable under his alleged valid contract, necessarily fell with his right to enforce their application to the satisfaction of his own claim. If he could not get the fund, it was matter of no consequence to him what was done with it. Davis vs. Gray, decided by a divided Court, stands alone as authority in support of the right of a Court to restrain State officers by injunction from doing something which they were required to do by the Constitution of the State. But there it was only necessary to restrain the officers of the State from executing the prohibited acts, in order to leave the complainants in full possession and enjoyment of the rights which they held under their contract, and which required no further affirmative State action to render them effective. Had the case been otherwise, as in Hart's case, so that complainants' relief would have required, in order to be of advantage to them, a mandatory order compelling the officers to do that which the State Constitution, from which they derived all their powers, forbade them to do, we are satisfied that the Supreme Court of the United States would have decided as we have done.

State ex rel. Newman vs. Burke, Treasurer, et al.

The love which equity is said to have for trusts must be restrained within the limits of judicial power. Her arms, however long, have no force to break through the impenetrable fortress in which the Constitution guards the rights of States.

The sacredness of contracts is a precious object in the eye of courts; but the preservation of the fundamental principles upon which the structure of our wise and beautiful system of government rests is of far higher value and importance.    No authority has ever been cited, and none exists, asserting or recognizing the power of any court to compel the officers of a State, against the acknowledged will of the State, as expressed in her Constitution, to take money out of her treasury and to apply it to the satisfaction of her alleged contract obligations.

In Osborne vs. Bank, 9 Wheaton, 739, the bill specially charged that the specific moneys were in possession of the defendants, not in their characters as officers, but as individuals, (p. 742) and the decree was against them as individuals, on the ground that they had taken, or held, possession thereof without warrant of law.

The distinction between this and the Hart case is obvious.

It is not pretended that the funds here in controversy are not lawfully in the treasury of the State, or that the defendants here have any other relation thereto, than as lawful custodians in their capacities as officers of the State.

It is, therefore, ordered, adjudged and decreed, that the judgment appealed from be annulled, avoided and reversed, and, proceeding to render such judgment as should have been rendered by the lower court, it is now ordered that the intervention of P. O. Fazende be dismissed, and that the demand of the intervenors, John Elliott et al., be rejected, except so far as herein granted; and that the writ of mandamus prayed for in the petition of relator issue and be made peremptory, so far as necessary for the payment of relator's claim, without prejudice, however, to the right and duty of the defendants to retain *in statu quo* so much of the fund in controversy as may be necessary to satisfy the pending claims of S. J. Hart and John Elliott et al., as set forth in the answer of defendants herein and in the intervention of Elliott, in case judgment should be rendered in their favor in the judicial proceedings instituted by them and now pending in the Supreme Court of the United States, as appears from the pleadings herein; costs of the lower court and of this appeal to be paid by defendants and intervenors.

## On Application for Rehearing.

The points upon which we are asked to amend our decree are of a character that we may dispose of them on this application without the necessity of granting a rehearing.

## I.

In our opinion we took from an agreement found in the record the statement that the amount in the treasury to meet payment of coupons due January 1, 1880, was $369,344.83. By a stipulation in writing, signed by all the parties in interest and filed with this application for rehearing, it is admitted that, through inadvertence, this amount was erroneously stated, and that the correct amount is $330,000, and it is agreed that a correction may be made accordingly, so as to conform to the facts. We accomplish the object of this request by thus noting the agreement and approving the correction as prayed for.

## II.

Our attention is called to the following expression in our opinion, viz: " it is alleged and not denied, that there is in said treasury ample funds to pay all outstanding and unpaid warrants for the years 1880 and 1881."

Although there was no denial, general or special, in the answers of the Treasurer and of the Auditor, it is pointed out that the answer of the Fiscal Agent does contain a general denial; and the defendants aver that, in point of fact, even with the addition of the interest fund to be transferred to the general fund, there will not be sufficient to pay all outstanding warrants of 1880 and 1881.

Without discussing technical questions of pleading, we think our decree may be recast so as to protect the interests of all claimants upon the fund, without injuring any possible legal rights of relator.

He is, and can be entitled only to his rateable share of the fund arising from a distribution thereof, according to law. If it be true, as alleged by him, that it is sufficient to pay all, of course, he will be paid in full. If that be not true, we avoid the risk of giving him more than he is legally entitled to, of which, certainly, he cannot complain.

This record does not enable us to determine the relative rights of relator and other warrant holders upon the fund, and we confine ourselves to a general order to distribute " according to law," leaving conflicting claims of warrant holders, founded on differences in dates or nature, to be settled in other proceedings.

It is, therefore, now ordered that our former decree herein be amended so as to read as follows:

It is, therefore, ordered, adjudged and decreed, that the judgment appealed from be annulled, avoided and reversed, and, proceeding to render such judgment as should have been rendered by the lower court, it is now ordered that the intervention of P. O. Fazende be dismissed, and that the demand of the intervenors, John Elliott et al., be rejected except so far as hereinafter allowed, and that the writ of mandamus, prayed for in the petition of relator, issue and be made peremptory, in

so far as to command the defendants, severally, to conform their books to the requirements of the law, by transferring the interest taxes collected to meet the coupons of consolidated bonds falling due January 1st, 1880, to the general fund of the State, without prejudice, however, to the right and duty of defendants to retain *in statu quo* so much of the fund in controversy as may be necessary to satisfy the pending claims of S. J. Hart and John Elliott et al., as set forth in the answers of defendants herein and in the intervention of said Elliott et al., in case judgment should be rendered in their favor in the judicial proceedings instituted by them and now pending in the Supreme Court of the United States, as appears from the pleadings herein ; and in so far, further, as to command said defendants to distribute said funds transferred as aforesaid, *according to law*, in payment of warrants, including those of relator, drawn upon the general fund for expenses of the State government for the years 1880 and 1881 ; costs of the lower court and of this appeal to be paid by defendants and intervenors.

Rehearing refused.