(129 So. 361)

**Succession of COTTON.**

No. 30550.

June 2, 1930.

Hubert M. Ansley and Borah, Himel & Bloch, all of New Orleans, for appellant.

Dart & Dart, of New Orleans, for appellee Canal Bank & Trust Co.

THOMPSON, J.

Frederick G. Cotton died in the city of New Orleans, February 22, 1929.

He left a daughter and son and two grandchildren, issue of his daughter's marriage with H. P. Sisk.

On the day of his death he executed a last will and testament, in which he named the Canal Bank & Trust Company of New Orleans as executor.

After making some special legacies, the testator directed that the portion of his es-

tate reserved to his daughter and son as their legitime be placed in trust for ten years, designating the Canal Bank & Trust Company, trustee.

The net annual income from the legitime was to be paid by the trustee to the daughter and son.

The residue of his estate he gave to his two grandchildren to be held in trust by the Canal Bank & Trust Company until their respective thirty-first birthday. The income from this residue was subject, however, to the payment of annuities of $1,500 per annum each to his half-sister and to his divorced wife and $600 to his brother's widow.

The balance of the income after paying the annuities was to be devoted to the education of the grandchildren.

The will was duly probated, and the Canal Bank & Trust Company qualified as executor and trustee.

The inventory and supplemental inventory showed real and personal property in this city amounting to $451,881.17.

Some of the property owned by the deceased was situated in Kentucky, and a copy of the will was presented to the proper court of that state and ordered registered and executed, and the Fidelity & Columbia Trust Company was named administrator of the property in Kentucky.

The executor under orders of court converted sufficient of the assets into cash to pay certain interest-bearing debts and to discharge the cash legacies. The payments so made are not involved in this appeal.

On June 21, 1929, the executor filed its first provisional account. This account showed in detail the receipts and disbursements up to that date and listed for approval the annuities to be paid and the delivery to be made of certain household effects to a special legatee. The account also showed the payments of income to Sam Cotton and his sister on their respective legitimes.

The account after due advertisement was approved, but on application of Sam Cotton the judgment was set aside, and thereafter Cotton filed an opposition to several of the matters embraced in the account.

The account later was homologated in so far as not opposed. The items and matters contained in the opposition will be considered later on in this opinion.

On September 23, 1929, the executor and trustee applied to the court contradictorily with Sam Cotton, for authority to sell the real estate in New Orleans. The daughter Mrs. Sisk consented to the sale, but Sam Cotton opposed it, and that is the subject of one of his complaints on this appeal.

On September 6, 1929, Sam Cotton filed in the circuit court of Jefferson county, Ky., a suit to annul all of the proceedings taken in the civil district court of Orleans parish on the ground that his father, at and prior to the time of his death, was domiciled in Kentucky and that the courts of Louisiana were without jurisdiction. He also asked that the will be annulled on the ground that his father was not, on the day the will was made and for some time prior thereto, mentally or physically capable of making a will.

Before the opposition to the account was heard, Sam Cotton filed a motion in the civil district court to stay all proceedings in that court until the matters relating to the domicile and the ability to make a will should be decided by the Kentucky court.

The motion was overruled, the opposition of Sam Cotton was rejected, and the account was duly homologated.

From that judgment the opponent appeals.

■ The first question in logical order is the motion to stay proceedings in deference to the courts of Kentucky. The motion is not supported by any authority or sound reason. The only reason offered is that the Kentucky court was the court first seized with jurisdiction on the question of domicile and of the validity of the will and that under the principle of comity the Louisiana courts ought to await the action of the Kentucky court.

In one of the cases cited by opponent it was held that the exercise of the power to stay suits on the principle of comity between courts of different sovereignties is purely discretionary, even where neither court has possession of the res. Jennings-Heywood, etc., v. Houssiere, etc., Oil Co., 119 La. 872, 44 So. 510.

In that case the court held that it saw no good and sufficient reasons for staying the suit in the state court which first exercised its jurisdiction in the premises. The same may be said here.

The testator made and executed his will in this city. In that last solemn act he declared that his domicile had been and was then in the city of New Orleans at his home No. 2639 Carrollton avenue. He appointed as executor and trustee to carry out the wishes expressed in his will a banking institution domiciled in the city where he died.

A large portion of his real estate was situated in said city. The will was admitted to probate in the court of New Orleans. The executor and trustee qualified under the will and proceeded to execute the same and had so executed it, partially, without any question raised by the opponent, who is himself a resident of the city of New Orleans, as to the domicile of his father or as to his capacity to make a will.

The Code of Practice, art. 929, declares that the place in which a succession is opened shall be (1) in the parish where the deceased resided, if he had a domicile or fixed place of residence in this state. (2) In the parish where he left land property, if he had neither domicile nor place of residence in the state. (3) In the parish in which it appears from the inventory that his principal property was situated, if he had property in several parishes. And (4) in the parish where he died, if he had no certain domicile nor any fixed property.

Article 935 of the Civil Code contains practically the same provisions as the article of the Code of Practice.

Under the articles of the Codes cited, it is clear that the civil district court of Orleans parish had jurisdiction to probate the will and to order its execution, at least in so far as concerns the property situated in this state.

■ However that may be, and whether the actual domicile of the testator was in Louisiana or in Kentucky, the fact remains that he had a residence in this state, that the succession was opened in this state, and jurisdiction having once attached and having been exercised by the courts of this state, all suits to annul such proceedings for any cause properly belong to the court first seized with and exercising jurisdiction.

The legal situation is not altered by the mere fact that the question of domicile and the mental capacity of the testator was first presented to the Kentucky court.

We are unable to discover from counsel's argument or from the record any good reason, or any reason at all, why the opponent, who as stated resides in this state and who has recognized the will, acquiesced in its

probate and partial execution by making himself a party to the probate and judicial proceedings in various ways, should leave or abandon the courts of this state and go into the court of another state to litigate, with the executor and trustee of this state by substituted service, matters which properly belong to the jurisdiction where the succession was opened and where the will was probated and ordered executed.

■ If there is any rule or principle of comity involved and due by the courts of one state to those of another, such comity should be applied in favor of the courts of this state, since such court was the first to assume jurisdiction of the opening of the succession and of the probate and execution of the will. And which jurisdiction has been recognized by the Kentucky court in the ancillary proceeding had in that court ordering the will registered and executed with respect to the property situated in that state. State ex rel. Newman v. Burke, 35 La. Ann. 188; Peck v. Jenness, 7 How. 612, 624, 12 L. Ed. 841.

In the last-cited case the Supreme Court of the United States said:

"It is a doctrine of law too long established to require a citation of authorities, that, where a court has jurisdiction, it has a right to decide every question which occurs in the cause, and whether its decision be correct or otherwise, its judgment, till reversed, is regarded as binding in every other court; and that, where the jurisdiction of a court, and the right of a plaintiff to prosecute his suit in it, have once attached, that right can not be arrested or taken away by proceedings in another court."

"These rules have their foundation, not merely in comity, but on necessity."

The refusal to delay proceedings in the court below was proper in the exercise of the court's discretion.

■ The testator had his life insured in different companies for $10,493.07. These policies were payable to the executors and administrators of his estate.

The avails of the insurance policies were collected and placed on the inventory as property of the estate to be administered in trust for the benefit of the heirs.

It is claimed by the opponent that this insurance belonged to the two heirs and did not properly fall under the trust provision of the will.

In support of this contention, counsel rely on a line of authorities which hold that life insurance forms no part of the estate and should not be administered in the succession.

In Succession of Aronson, 168 La. 887, 123 So. 608, we said that insurance payable to executors and administrators formed no part of the estate and should not have been included in the administration because such insurance could not be made to respond to the debts of the deceased.

In that case the insurance was included in the administration for the very obvious purpose of increasing the assets of the succession so as to meet law charges to such an extent as to absorb all of the funds properly belonging to the succession and thereby leave nothing for the creditors.

In the later case of Succession of Erwin, 169 La. 877, 126 So. 223, we said that what the court meant in the Aronson Succession was that the proceeds or avails of life insurance policies with respect to creditors and quoad the creditors of the insured formed no part of the estate of the deceased.

The Sizeler Case, 170 La. 128, 127 So. 388, has no application whatever to the instant case. There the policy was in favor of a specially named beneficiary, and the court held that the insurance could not be recovered by the heirs of the insured because where a policy is payable to a beneficiary named the insurance did not belong to the heirs or the estate of the insured.

We imagine that no case can be found where the court has held that an insurance policy payable to the executors and administrators and where no creditors were involved, did not form a part of the estate of the insured and could not be disposed of by the insured by last will and testament.

The insurance here, payable as it was, could be disposed of by the testator and was properly included in the trust created by the testator. The succession is solvent and there are no creditors claiming payment out of the insurance money.

Another ground of opposition is to the application of the executor to sell the residence or home property of the testator on Carrollton avenue. The property will be unfurnished when the household effects are delivered to the legatee named in the will and it has not been revenue producing.

All agree that the property will bring not less than its appraised value, $20,000, and probably a higher price if sold on credit as suggested in the application for the sale.

The will directed the trustee to sell any real estate owned by the testator as soon after his death as in the judgment of the trustee was wise and proper and to invest the proceeds in securities, mortgages, and other investments.

The trial judge after hearing the evidence ordered the sale to be made as prayed for,

and we see no sufficient reason for interfering with the discretion of the trustee in carrying out the wishes of the testator, nor in disturbing the judgment of the lower court in that respect.

Another item opposed is that of $2,500 in favor of Drs. Ernst & Ernst.

The senior member of the medical firm first testified that the bill was for services rendered the deceased from March 3, 1921, up until his death, but later he said that the bill was for services during the last illness beginning with December 22, and ending February 22, the day of Cotton's death.

The testimony of this witness as to the nature of services and the charges made is corroborated to some extent, but on the whole the testimony is not entirely satisfactory and in our opinion does not warrant the court in allowing the full amount charged,

There is no hard and fast rule laid down either by law or jurisprudence for the guidance of the court in the matter of physicians charges. It has been said that the courts must rely to a large extent on the opinions of reputable physicians as to the value and character of services rendered and that the courts may also take into consideration the skill of the physician, the amount of services rendered, and the value of the patient's estate. Czarnowski v. Zeyer, 35 La. Ann. 796; Succession of Haley, 50 La. Ann. 840, 24 So. 285; Succession of Levitan, 143 La. 1027, 79 So. 829, 3 A. L. R. 1646; Young Bros. v. Succession of Von Schoeler, 151 La. 74, 91 So. 551.

In view of all of the evidence and the attending circumstances, we have concluded that the charges are excessive and should be reduced to $1,500.

There are some other items contained in the opposition to the account, but they are not discussed or even referred to in opponent's brief, and hence must be considered as abandoned.

· The judgment appealed from is amended by reducing the claim of Drs. Ernst & Ernst to $1,500, and as thus amended the judgment is affirmed; the cost of appeal to be paid by the succession.