MICHIELS et al. v. Succession of GLADDEN.

No. 5613.

Court of Appeal of Louisiana. Second Circuit.

March 8, 1938.

Rehearing Denied April 1, 1938.

Writ of Certiorari and Review Granted May 2, 1938.

McHenry, Lamkin & Titche, of Monroe, for appellants.

M. C. Redmond, of Monroe, for appellee.

HAMITER, Judge.

The olographic last will and testament left by John T. Gladden, deceased, provided in part that:

"* * * the forty acres of land in Section 2, Township 15 North, Range 2 East, being the NE¼ of SE¼ of said section to be sold for cash and the proceeds together with my life insurance to be distributed as follows:

"First: All my honest debts to be paid save and except the mortgages on the property left to Hooter and David which said mortgages they are to assume."

Then follows in said will, under the instructed distribution plan, four other classifications, the first three of which are not relevant to a decision of this controversy. The last classification, however, provides for the payment of specified sums to Mrs. Ollie Gladden Michiels, Mrs. Bernice Huffman, Miss Sarah Minnie Ragland, Miss Edna Mabel Ragland, and Mrs. Louise Ragland Smith, none of whom is a forced heir of the testator.

The will was regularly probated and the executors named therein were duly appointed, qualified, and confirmed.

Some time after their confirmation, the testamentary executors appeared in court alleging that they had truly and faithfully administered the affairs of the Succession of John T. Gladden, deceased, and presented their final account. Their petition further showed that: "This succession is insolvent, and that, accordingly, as a part of said final account, petitioners have incorporated a proposed disbursement of the funds."

The estimated total assets of the succession, as disclosed by the account, amounted to $2,606.60. This included the proceeds of the insurance policy on decedent's life, referred to in the will and payable to his estate, totaling the sum of $1,001.46. All of such assets were scheduled by the executors for application to and payment on the succession debts; the latter being greatly in excess of the former.

Thereafter, the above-named five legatees filed an opposition to the final account alleging that they are beneficiaries under the will of John T. Gladden, deceased; that the executors have ignored them in the final account; and that they are entitled to be paid the proceeds of the life insurance policy, in proportion to the amounts of their respective legacies, which under the law of this state are exempt from liability to creditors.

Exceptions of no cause and no right of action and a motion to strike were tendered to the opposition by the executors. These were overruled. Trial was then had, and there was judgment sustaining the opposition. The executors appealed suspensively.

The appeal presents for consideration a very interesting question and one that is res novo in Louisiana jurisprudence. It is: In the absence of forced heirs, may the proceeds of a life insurance policy be validly employed in the payment of debts of the insured's succession when the policy is payable to his estate and he has directed such disposition by means of a last will and testament?

The legislative enactment relied on by opponents to sustain their opposition herein and which is urged as providing a negative answer to the above-propounded question,

is Act No. 189 of 1914, as amended by Acts No. 88 of 1916, No. 95 of 1934, and No. 155 of 1934. The provisions of the statute, as amended, which are pertinent to a discussion and decision of this controversy are as follows:

"That the following shall be exempt from all liability for any debt:

"(1) The proceeds, avails and dividends of all life, including fraternal and co-operative, health and accident insurance. * * *

"Provided, however, that there shall be excepted from the provisions of this Act a debt secured by a pledge of a policy, any rights under such policy that may have been assigned, and any advance payments made on or against such policy."

The appellate courts of Louisiana have had occasion in many instances to give consideration to the quoted statutory provisions, and they have consistently held that by reason of the provided exemption the proceeds of an insurance policy payable to the insured's estate inure to the benefit of the heirs, legal or testamentary, and, subject to the exceptions enumerated in the act, are not liable for succession debts. Succession of Aronson, 168 La. 887, 123 So. 608; Succession of Erwin, 169 La. 877, 126 So. 223; Succession of Cotton, 170 La. 828, 129 So. 361; Succession of Dumestre, 174 La. 482, 141 So. 35; Nulsen v. Herndon, 176 La. 1097, 147 So. 359, 88 A. L.R. 236.

However, none of the cited cases involves or makes reference to a testament of the insured instructing payment of debts out of such proceeds.

 Only two cases in the jurisprudence of other states of the union involving a question closely analogous to the one here presented have come to our attention. These are In re Caldwell's Estate, 204 Iowa 606, 215 N.W. 615, 616, decided by the Supreme Court of Iowa in 1927, and Union Trust Co. v. Cox, 108 Tenn. 316, 67 S.W. 814, 815, the decision in which was rendered by the Supreme Court of Tennessee in 1902. In both of these cases an affirmative answer was given to the question which we are herein called upon to decide. Of course, such authorities are not binding on the courts of Louisiana; but as they determine an issue practically identical with the one in the instant case and constitute expressions of the highest courts of the named states, they possess at least a persuasive effect and merit our consideration and a discussion in this opinion.

The decedent in the case of In re Caldwell's Estate, supra, left life insurance policies in which his estate was designated the beneficiary. The court found that his will clearly provided for the payment of succession debts out of the insurance proceeds. The opinion then recites:

"This being the intention of the testator clearly expressed in the will, the next and more important and difficult question presents itself: Did the testator have a right, first, to dispose of the proceeds of life insurance by will, and second, to subject the same to the payment of his debts? The first question is answered by the recent decision of this court in Miller v. Miller, 200 Iowa 1070, 205 N.W. 870, 43 A.L.R. 567, and need not be discussed herein. Commencing with the Code of 1851, there has at all times been a provision in the statutes of this state exempting the avails of life insurance from the debts of the deceased, except where the same is made liable by special contract or arrangement with the decedent. Section 1330, Code 1851; section 2362, Revision of 1860; sections 1182 and 2372, Code 1873; section 1805, Code 1897; section 8776, Code 1924. The language employed by the Legislature at the time of each revision of the Code has been varied somewhat, but the substance is identical. We held in Miller v. Miller, supra, that these statutes have not limited and do not limit the right of the insured to make testamentary disposition of life insurance. They were designed to protect the wife and children against the claims of creditors of the decedent. In other words, the statute has always exempted life insurance from the payment of the debts of the deceased insured, but were they designed to limit the right of the insured to dispose thereof by will? We think not. The exceptions noted in the statute merely recognize and preserve the contractual rights of the insured and of those affected by such contracts or arrangements. * * *

"The right of the insured to dispose of life insurance by will necessarily carries with it the right to set the same aside for the payment of debts. His right to do this is not prohibited by statute in this state."

In the Union Trust Co. Case, supra, the opinion reveals that the executor of decedent's will collected the proceeds of certain life insurance policies payable to the testator's estate. It then states: "It is conceded that this fund held by the executor, under sections 4030, 4031, Shannon's Code, would

pass to the widow and children of the assured, free from the claims of creditors, all else out of the way; but it is insisted that by a holographic will, duly admitted to probate after his death, the testator had charged it in the hands of his executor with the payment of all of his 'just and honorable debts,' of which the complainant's was one."

The court's conclusion was that payment of debts out of such proceeds, pursuant to the provisions of the will, was proper and legal.

The general and fundamental rule of law with reference to interpreting legislative acts is that the courts must seek to ascertain the intent and purpose of the Legislature in creating them. Louisiana Western R. Co. v. Village of Duson, 146 La. 190, 83 So. 455; Houghton v. Hall, 177 La. 237, 148 So. 37; Gremillion v. Louisiana Public Service Commission, 186 La. 295, 172 So. 163. Our study of the statute in question leaves us with the conviction that the Louisiana Legislature intended through that enactment to afford protection to the assured, and, after his death, to his family and loved ones, against the enforced collection of debts on the part of creditors, or the unauthorized payment thereof, out of the proceeds, dividends, and avails of insurance. However, it did not, in our opinion, propose to prohibit his voluntary payment of debts, or the satisfaction thereof on his demise through testamentary direction, out of such funds.

It is to be noted that the exemption statute not only affects the proceeds of life insurance, but also the avails of health and accident policies. Benefits under the last-mentioned contracts are generally paid during the insured's life and to him; and they cannot, by reason of said exemption, be legally seized by creditors to provide compulsory satisfaction of his debts. But certainly it will not be contended that the discussed legislation furnishes a bar to his voluntary payment of debts with those funds. Then, too, there is excepted from the provisions of the statute those debts or obligations of the insured which have been secured by an assignment or pledge of the policy made of his own volition. If the insured, during his lifetime, can voluntarily settle his debts from insurance avails received by him, or give protection to creditors by policy pledges or assignments, why cannot he legally and effectually authorize, through his will, a debt settlement from insurance proceeds to be made after his death. The Supreme Court of Louisiana has stated in no uncertain language that funds of that character can be disposed of through a last will and testament. Succession of Cotton, 170 La. 828, 129 So. 361. However, in the cited case the testator did not order that the insurance proceeds be used in payment of debts, but provided for the creation of a trust therefrom for the benefit of the heirs.

Let us assume for the purpose of this discussion that the testator in the instant case had stated in his will that: "The proceeds of my life insurance shall be distributed to the following named persons in the amounts set opposite their respective names, to whom I am indebted to said extent, namely, John Doe, $100.00, (and all of the other creditors)." Although the phraseology used in this hypothetical will is somewhat different from that of decedent in the probated testament, the effect of the two is identical. Provision is therein made for the payment of decedent's debts from the revenue furnished by an insurance contract, just as was done in the actual will. In view of the nonexistence of forced heirs, the testator may legally make such disposition of his property as he desires, provided public policy is not contravened; and we venture the opinion that the suggested bequests under the assumed provisions would receive legal sanction.

Our attention is directed by opponents' counsel to a statement the Supreme Court made in the case of Succession of Erwin, 169 La. 877, 126 So. 223, 225, which reads: "In view of the statute and the decisions of this court referred to, it cannot be regarded as a debatable question any longer, that the proceeds or avails of life insurance policies are not and cannot be made liable for the debts of the insured, and the creditors of the deceased insured have no interest in the disposition made or to be made of such funds."

A study of the entire opinion in the cited case discloses that the insured named in the policies died intestate. There was no will involved in that controversy directing payment of decedent's debts out of the insurance proceeds, as in the instant litigation, and by reason of that factual difference the court's holding and language do not, in our opinion, conflict with what we have herein stated and held.

If decedent in the case at bar had died intestate, or if his will had not provided for

payment of his debts from the insurance proceeds, the Erwin decision, supra, as well as other authorities which we have above cited, would be decisive of this matter, and such funds could not be used to satisfy debts; and this is conceded by counsel for the executors. But neither of those suggested circumstances is here present.

We are of the opinion that the executors have properly scheduled the insurance proceeds for payment of the testator's debts as he instructed in the will. Accordingly, the judgment of the trial court is reversed and set aside, and the opposition is now dismissed at the cost of opponents in both courts.