GULOTTA, Judge.
This is an appeal from a judgment granting plaintiffs’ motion for summary judgment while denying a motion for the same filed by the defendant.
These matters are two consolidated suits seeking the invalidation of a proclamation by the Governor of Louisiana dated March IS, 1971, incorporating an area in the Parish of Jefferson proposed to be “The Town of Lafitte” and described as follows:
“Beginning at the intersection of the center line of Bayou Barataría and the line dividing Range 23 East and Range 24 East; thence in a southerly direction along the line dividing Range 23 East and Range 24 East to the intersection of the line dividing Township 16 South and Township 17 South to the intersection of the center line of Bayou Barataría; thence in a generally northerly direction along the center line of Bayou Barataría to the intersection of the line dividing Range 23 East and Range 24 East, said point being the point of beginning.”
The attack strikes at the unconstitutionality of statutes providing for incorporation and, in addition, charges that the proclamation is null and void because the proposed petition for incorporation failed to fully comply with the requirements of LSA-R.S. 33:51 and LSA-R.S. 33:52.[1]
*518 The constitutional attack is leveled at that part of the statute which permits a minority (25%) of the electors residing in the unincorporated settlement owning 25% in value of the property composing it to seek incorporation and impose its will on the majority, thereby violating the due process and equal protection clauses of Section 1 of the 14th amendment of the United States Constitution and Article 1, § 2 of the Constitution of Louisiana.
Specifically, the claim of failure of full compliance with the requirements of the statute is that a lesser amount than 25% of the electors owning property in the territory to be incorporated signed the application. Moreover, defects in certification by the registrar of voters[2] and assessor as well as failure of certification of publication are alleged.
Plaintiffs claim the certificate of the assessor fails to indicate the assessed valuation of each of the signers of the petition for incorporation and does not state the total assessed valuation of all immovable property within the proposed town. Furthermore, it omits the valuation of movable and immovable property fixed directly by the Louisiana Tax Commission and fails to include the assessments for commerce and industry within the proposed town or the assessments for the public utilities in the area.
An additional basis for having the proclamation set aside and vacated is the complaint that the area sought to be incorporated is a portion of the same geographical area for which a prior attempt to incorporate was made and denied within a period of less than one year from the date of the second attempt to incorporate.[3] This, plaintiffs argue, is prohibited by LSA-R.S. 33:52.
Plaintiffs assert further that the proposal is unreasonable because the vast majority of the area sought to be incorporated is composed of marshland or water, uninhabited and undeveloped, from which no benefit would be derived by the incorporation and that it would be the subject of the imposition of taxes with no prospect for the owners of the land to receive any services commensurate with the tax burden.
Finally, because of the above deficiencies, plaintiffs contend the Governor did not have the proper information upon which to issue the proclamation declaring the municipality to be incorporated.
Defendants, on the other hand, in a memorandum supporting a motion for summary judgment filed on their behalf, argue that neither is the act unconstitutional because of an improper delegation of a legislative function to the executive nor is there a violation of equal protection or the due process clauses of the federal and state constitutions by reason of the fact that the legislature has provided for 25% of the electors to seek the proclamation. More *519 over, in answer to the complaint by plaintiffs that the certificate of the registrar of voters is defective, defendants contend the act does not require a certificate from the registrar, and they did more than is required by attaching the certificate to the petition for incorporation. They further argue that the application for the proclamation includes a certificate of the assessor showing the total amount of the assessed valuation of the property on the regular rolls of the assessor and further shows the total assessed value of the property of those signing the application indicating that the value of the property owned by the signatories is well in excess of the 25% required. Furthermore, defendants rely on the opinion of the Attorney General informing the Governor that all statutory requirements have been met. In answer to plaintiffs’ assertion that the publication of the advertisement was not properly certified, defendants contend that not only an affidavit of publication was attached to the petition but that the original publications were also attached.
Defendants further suggest that the area sought to be incorporated is not the same as that included in the petition which was denied within the prior year. Therefore, the prohibition that an application cannot be made for incorporation of the same area within a year of a denial of the incorporation is without foundation. Furthermore, plaintiffs’ attack at the unreasonableness of the incorporation because of the topography of the area is controverted by defendant with the argument that the entire area within metropolitan New Orleans was at one time marsh, swamp, uninhabited and undeveloped. Defendants insist that plaintiffs’ suggestion in this respect is, in itself, unreasonable because of its lack of foresight in future development.
While plaintiffs’ motion for summary judgment addresses itself to the arguments relating to noncompliance with the statutory requirements as set forth in LSA-R.S. 33:51 et seq. and to the unreasonableness of the incorporation, it does not re-urge the unconstitutionality of the statute as set forth in the original petition filed herein. Nevertheless, defendants seek to have the question of constitutionality passed on and so urge in argument and in brief.
We find the jurisprudence, as we consider it, to be contrary to defendants’ argument in this respect. We believe it fundamental that a court will not consider the constitutionality of a statute unless it is necessary for a determination of the litigation and will not do so if there is also present some other grounds upon which the matter might be disposed. Aucoin v. Dunn, 255 La. 823, 233 So.2d 530, 531 (1970); Ashwander v. Tennessee Valley Authority, 297 U.S. 288, 347; 56 S.Ct. 466, 483, 80 L.Ed. 688 (1936); Siler v. Louisville & N. R. Co., 213 U.S. 175, 193; 29 S.Ct. 451, 455, 53 L.Ed. 753 (1909); Chandler v. Garrison, 286 F.Supp. 191, 199 (E.D. La.1968).
Because there are other issues the determination of which are dispositive of this litigation, we will not consider the constitutional question argued by the defendants.
The first question for our determination is whether or not this matter in its present posture is the proper subject for a motion for summary judgment.
It is significant that both proponents and opponents of the proposed incorporation who are parties to this litigation have alleged by the filing of their respective motions for summary judgment that there exists no genuine issue of material fact. However, defendants (proponents) in brief and argument suggest that there actually exists an issue of fact and argue that the matter should be remanded for a full trial on the merits. They have failed, however, in their attempt to point out to us any specific genuine issue of material fact. Irrespective of this, we have searched the record for the existence of a factual issue but have *520 found none. Accordingly, we concur with the trial judge that this matter is properly the subject of a summary judgment.
Before considering whether the trial court properly granted plaintiffs’ motion for summary judgment, we deem it advisable to ascertain whether defendants’ motion for the same was properly denied.
Defendants attached two affidavits to their motion in an attempt to show there was a genuine issue of material fact. The effect of the affidavits, therefore, was not so much to support reasons why defendants’ motion should be granted but rather to show why plaintiffs’ motion should not.[4]
Although the affidavits dispute plaintiffs’ allegation that various individuals signed the petition under duress, this is immaterial because the names of the signatories were nevertheless included in determining whether the number of electors owning property within the area who signed the petition constituted 25% and owned 25% of the property therein. Furthermore, the remaining recitals in the affidavits merely reiterated the contents of those affidavits which were attached to the petition for incorporation. In view of all the pleadings and affidavits, we are convinced the trial court correctly denied defendants’ motion for a summary judgment.
We now address ourselves to the correctness of the granting of plaintiffs’ motion for summary judgment which is the crux of the matter before us. Was the petition for incorporation in compliance with the provisions of LSA-R.S. 33:51 et seq. and particularly with LSA-R.S. 33:52? We are of the opinion that it was not, and the trial court properly concluded such.
The incorporation is sought under the provisions of LSA-R.S. 33:51 and LSA-R.S. 33:52. The pertinent parts of LSA-R.S. 33 :52 which concern us are:
“Whenever 25% of the electors residing in an unincorporated settlement owning 25% in value of the property composing it shall sign and present to the Governor a petition setting forth the metes and bounds of the unincorporated settlement, stating the number of inhabitants residing therein, and praying incorporation, he shall inquire into the facts involved. The petition shall have attached a certificate from the assessor of the parish wherein the settlement is located certifying as to the assessment in that parish of each of the owners signing the petition. The assessment shall be presumed to he the value of the property. * * * ” (emphasis ours)
In determining the effect of the phrase “Whenever 25% of the electors residing in an unincorporated settlement owning 25% in value of the property composing it”, the meaning of the word “property” becomes the focal point. There is no dispute that the value of the property under the statute means assessed value of the property.
To simplify the issue, defendants Lafitte et al. insist that the word “property” as *521 used in the statute includes only that property on the general rolls of the assessor which property is owned by individuals (since only individuals could be electors) as distinguished from corporate property and property owned by public utilities as reflected by the commercial and industrial rolls and public service rolls. To put it another way, “property” means only that which is owned by electors residing in the territory and included only on the general rolls[5] of the assessor. According to the defendants, this totals the sum of $444,699.00,[6] and the total assessed value of the signers of the petition for incorporation amounts to $279,880.00,[7] well in excess of the 25% in value of the property composing the territory sought to be incorporated and owned by 25% of the electors residing in the area.
Plaintiffs, on the other hand, argue that the word “property” as incorporated in the statute is all inclusive and the legislature intended to include all property on the assessment rolls including that on the general roll as well as that on the commercial and industrial rolls and the public service rolls. They contend the total assessed value of this property within the territory sought to be incorporated, amounts to $1,274,548.00. They further submit that the assessed value of the property owned by the signato-, ries to the petition for incorporation does not total 25% in value of the property composing the unnamed settlement. Therefore, plaintiffs insist there is failure of “full compliance” as required by the statute.
The trial judge in a carefully thought out and well reasoned opinion stated:
“The first and perhaps foremost question presented is the meaning of the word ‘property’ as used in the statute. It is noted that while the term ‘property’ is used in the statute in a number of places, the term is nowhere qualified with an adjective or other modifier. Property exists in diverse and various forms; it may, for instance, be real or personal, corporeal or incorporeal, movable or immovable, tangible or intangible.
“Does the unqualified word ‘property’ as used in the statute mean property of every nature and kind, so that the owners of 25% of all such property in the area to be incorporated must be signatories to the petition for incorporation?
“To ask the question is to answer it. Because of its myriad forms, and daily fluctuation in value, property, as used in the statute, cannot mean property of every nature and kind; for if that were the meaning intended, trying to evaluate such property, indeed even trying to list it, would be a vain and useless thing. Either or both of such efforts then would present a task beyond human ability to perform.
“It is clear, then, that something less than an all-encompassing definition of property is intended by the statute.
“It is then a question of what type of property the statute contemplates. To resolve this problem, recourse must be had to the statute itself (R.S. 33:52 as amended). The statute speaks in terms of ‘assessment’, e. q. ‘the petition shall have attached a certificate from the assessor of the Parish wherein the settlement is located certifying as to the assessment in that Parish of each of the owners signing the petition’ and there are a number of other references to assessment in the statute.
*522 “Thus, it is clear that the type of property which the statute concerns is assessed property — property carried on the rolls of the assessor. * * * ”
We concur with the reasons hereinabove set forth. Moreover, it is significant that the legislature placed no restriction or limitation on the word “property”. 73 C.J.S. Property § 1, p. 137 explicates the meaning of the term property when used generally in a statute:
“ * * * Generally, as used in statutes, the term ‘property’ should be given its ordinary meaning, and it should not be given a limited or restricted meaning,
* * * # * * “The word 'property* includes both real and personal property, and ordinarily will be construed as meaning both real and personal property.”
In support of this construction, the Supreme Court in interpreting a taxing statute said in Kansas City Life Ins. Co. v. Hammett, 177 La. 930, 149 So. 525, 526 (1933):
“ ‘The term “property” is sufficiently comprehensive to include every species of estate, real and personal, and everything which one person can own and transfer to another. It extends to every species of right and interest capable of being enjoyed as such upon which it is practical to place a money value.’ ” (emphasis ours)
Accordingly, we find no merit to the restricted meaning of the word “property” as contended by the defendants. It would have been a relatively simple matter for the legislature to include a limitation on the word property if it so desired. The word “property” is recited at numerous places in the statute. However, contrary to defendants’ interpretation, it is obvious that the legislature intentionally imposed two separate percentage requirements. The first is that 25% of the electors be required to sign the petition and the second is that the petition represent 25% of the assessed value of the total property composing the unnamed settlement. Plaintiffs’ interpretation of the statute actually makes the requirements more stringent and hence more meaningful because when both are met, the list of petitioners is more truly representative. This objective, we deem was the intent of the legislature.
 This court must interpret laws so as to give them the meaning intended by the lawmaker. Smith v. Flournoy, 238 La. 432, 115 So.2d 809 (1959); Michiels v. Gladden, 180 So. 862, 865 (La.App. 2nd Cir. 1938), aff’d 190 La. 917, 183 So. 217, and cases cited therein. As in this instance, where the new statute is worded differently from the preceding statute, it is presumed the legislature intended to change the law. Doyal v. Roosevelt Hotel, 234 So.2d 510, 513 (La.App. 4th Cir. 1970) and cases cited. In regard to interpreting statutes, the court in Dore v. Tugwell, 228 La. 807, 84 So.2d 199, 204 (1955) referred to certain guidelines which are apropos:
“In this situation, the question arises as to the duty of the court in construing the statute. It has been many times said that it is the function of the courts to interpret the laws so as to give them the connotation the lawmaker obviously intended and not to construe them so rigidly as to give them preposterous or odd meanings. State ex rel. Womack v. Jones, 201 La. 637, 10 So.2d 213; Berteau v. Police Jury of Parish of Ascension, 214 La. 1003, 39 So.2d 594 and Webb v. Parish Council of Parish of E. Baton Rouge, 217 La. 926, 47 So.2d 718. * * *"
Without any legislative restriction, we can only conclude that the legislature intended that all property on the assessment rolls would be included. Thus, our determination is that reference to “assessment” [8] *523 (embodied in the statute) as the presumed value of the property relates to property appearing on the assessment rolls including regular, commercial, and industrial, as well as public service assessments.
With the foregoing in mind, in the absence of any showing of a material issue of fact by defendants and for the purposes of the plaintiffs’ motion for summary judgment, we will consider the affidavits and exhibits attached to plaintiffs’ motion. According to those exhibits, the total value of the listed assessment of petitioners’ (for incorporation) property within the limits of the proposed town is:
Regular Rolls $205,395
Commercial and Industrial Rolls 74,485
Public Service Rolls -
TOTAL $279,880
The total assessed value of all property within the limits of the proposed town is as follows:
Regular Rolls $444,169 [9]
Commercial and Industrial Rolls 512,985
Public Service Rolls 317,394
TOTAL $1,274,548
Mere mathematical computation is mute evidence that $279,880 is not 25% of $1,274,548 but when calculated amounts to 21.95%.
There is other evidence in the record indicating that errors in the assessed value of the property owned by petitioners was of a lesser amount,[10] as well as that certain petitioners[11] must be disqualified for not residing within the proposed area at the time of incorporation, thereby reducing the qualified number of petitioners as well as the assessed evaluation of those petitioners. Error is also claimed by the plaintiffs in regard to the amount of the assessment on the commercial and industrial rolls in that the actual amount is appreciably lower [12] than that credited to the total assessed value of petitioners’ property. This, plaintiffs argue, further reduces the percentage.
However, because we have concluded the highest total value of assessment listed by petitioners is substantially less than that required under the statute, we find no purpose in considering the suggested lower adjustments.
Accordingly, we are of the opinion that the petition for incorporation was lacking in that the requirement of ownership of 25% in value of the property composing the unincorporated settlement was not met. We must, therefore, conclude there was failure of “full compliance” with the statute.
In view of the foregoing determination, we find it unnecessary to consider plaintiffs’ attacks on the defects of the certificate of the registrar of voters or on the certificate of publication of the advertisement. For the same reason, we will consider neither the attack on the unreasonableness of the application because of the topography of the area nor the question of the refiling of an application for incorporation for the same territory within one year after a denial of the same. Any consideration of these contentions would be *524 purely an exercise in academic stimulation and futile.
For the foregoing reasons, the judgment of the trial court is affirmed. Costs to be paid by defendants-appellants.
Affirmed.

. LSA-R.S. 33:52 reads :
“Whenever 25% of the electors residing in an unincorporated settlement owning 25% in value of the property composing it shall sign and present to the Governor a petition setting forth the metes and bounds of the unincorporated settlement, stating the number of inhabitants residing therein, and praying incorporation, he shall inquire into the facts involved. The petition shall have attached a certificate from the assessor of the parish wherein the settlement is located certifying as to the assessment in that parish of each of the owners signing the petition. The assessment shall be presumed to be the value of the property. Where there has been a change of ownership of property since the last assessment of it, the assessor shall certify the valuation of the present owner in accordance with the last assessment appearing on the rolls against the previous owner. In any case where the property of the present owner has not specifically been assessed, the assessor shall estimate the assessed value of the property for the current year and certify the same as the value of the property. A copy of the petition in full, including the names of the petitioners, shall have been published once each week during the period of 15 days in a newspaper having circulation in the parish wherein the settlement is located and a certified copy of the published copy together with the names of the newspaper and the dates on which the publishment was made shall be attached to the petition. If the Governor finds that there has been full compliance with these requirements and that the proposed municipality contains at least 150 inhabitants, he shall, by proclamation, define the limits and boundaries, fix the name, and declare the municipality incorporated effective 30 days subsequent to the date upon which he issues the proclamation. Any interested citizen residing in the municipality or any owner of property located therein may, within the 30-day period before the proclamation becomes effective, file suit in the district court having jurisdiction over the municipality to contest the proposed incorporation and the question shall be whether it is reasonable and if there has been full compliance with the statutory requirements. If the incorporation is adjudged reasonable and it is found that requirements have been satisfied, the incorporation shall be effective ten days after the judgment is rendered and signed unless a suspensive appeal therefrom has been taken within the time and manner provided by law. If the proposed incorporation is adjudged to be unreasonable or if it is found that all requisites have not been fulfilled, the proclamation shall be vacated and the proposed incorporation shall be denied and a petition to the *518 Governor to incorporate the same municipality shall not be presented within one year thereafter. A similar right of appeal from the judgment of the district court vacating the proclamation and denying the incorporation shall be granted (to) any interested citizen or property owner in the municipality.”

. The certificate attached to the petition for incorporation states that all electors registered in the sixth ward of Jefferson Parish in precincts 1, 2, and 5 reside in settlements known as Lafitte and Rosethorn Road. However, the certificate does not contain any description of the geographical limits of the settlements known as Lafitte and Rosethorn. Moreover, the geographical limits of these precincts are not co-extensive with and contain more land area than the boundaries of the proposed town of Lafitte.

. Proclamation dated September 28, 1970, is “The City of Lafitte” was annulled by judgment dated December 29, 1970, in proceedings “Charles Stein et al. v. The City of Jean Lafitte, et al”, No. 130-286, of the docket of the 24th Judicial District Court for the Parish of Jefferson consolidated with No. 130-345 entitled “Inez Corporation v. The City of Jean Lafitte, et al” and consolidated with No. 130-337, entitled “Barataría Plantation Company v. The City of Jean Lafitte, et al”.

. The affidavits consisted of sworn statements of Leo E. Kerner, Jr. and Quinten S. Couevas stating:
1. that at no time during the pre-incor-poration period did any signatories request that their names be removed from the petition for incorporation.
2. that all signatories signed voluntarily and without coercion knowing the content of the instrument.
3. that they presented the petition to the Governor with the following items attached :
a.the published copy of the Jefferson Democrat, with an affidavit of publication containing the name of the newspaper and dates of publication
b. A certificate from the Registrar of Voters of Jefferson certifying as to the electoral status of the signatories stating they composed in excess of 25% of the qualified electors residing in the area to be incorporated
c. A certificate from the assessor of Jefferson Parish certifying that the total assessment of the owners signing the petition exceeded the 25% of the total assessment of the area sought to be incorporated.

.It is conceded by defendants that the petition contains no certificate of assessment from the commercial and industrial rolls and public service rolls because 47 of the 60 owners of property on the commercial and industrial rolls and all seven of the owners of property on the public service rolls are not electors and are not capable of being electors and could not sign the petition.

. There is a $500.00 discrepancy hereinafter discussed in this opinion.

. This figure includes $205,395.00 from the general rolls and $74,485.00 from the commercial and industrial rolls.

. LSA-R..S. 33 :52, supra :
“ * * * The assessment shall be presumed to be the value of the property.

. The corrected regular roll assessment total after deducting $500.00 included in the commercial and industrial roll. This is a duplication and must be deducted from the assessment on the regular rolls.

. Evidence of R. J. Horstmeier showing the correct total assessment of property owned by the signatories to the petition is $203,545 and not $205,395, as reflected by the petition for incorporation.

. It is claimed that 19 in number with a total assessment of $17,325 are in this category.

. The assessment of $74,485.00 on the commercial and industrial rolls is claimed by petitioners while the corrected amount is $28,100.00. The difference represents the adjustments made by the Tax Commission.