(83 South. 664)

No. 23474.

Succession of CLEMENT.

(Nov. 3, 1919. Rehearing Denied Jan. 5, 1920.)

*(Syllabus by Editorial Staff.)*

CONSTITUTIONAL LAW ⬅180 — EXEMPTIONS ⬅3 — OBLIGATION OF CONTRACT NOT IMPAIRED BY STATUTE EXEMPTING LIFE INSURANCE.

As applied to a pre-existing note of insured and his life policies, one having then no surrender value and the other afterwards allowed to lapse, *held* that Act No. 189 of 1914, exempting proceeds of life insurance from liability for debt, if not secured by pledge of the policy, affected only slightly and remotely the means or remedy of enforcing the obligation of

146 LA.—13

the pre-existing contract, and so did not violate the Constitution.

Monroe, C. J., dissenting.

Appeal from Second Judicial District Court, Parish of Webster; J. N. Sandlin, Judge.

In the matter of the succession of O. P. Clement. There was judgment in favor of the Bank of Webster and the Bank of Minden, opponents of the account of the administratrix, and the widow, as administratrix and as tutrix of the minor children, appeals. Reversed and rendered.

L. K. Watkins, of Minden, for appellant.
Robert Roberts, Jr., of Minden, and J. S. Atkinson, of Shreveport, for appellees.

O'NIELL, J. O. P. Clement died, intestate, in 1917, leaving a widow and five minor children, and an insolvent succession. Among the assets of the succession were two life insurance policies, payable "unto his executors, administrators or assigns," one in the New York Life Insurance Company for $1,500, dated the 5th of February, 1909, and one in the Penn Mutual, for $3,000, dated the 4th of May, 1914. The widow was appointed and qualified as administratrix of the succession and as tutrix of her five minor children. She collected, as administratrix, $1,472 in settlement of the New York Life policy, and $2,961.33 on the Penn Mutual policy. Assuming that the $4,433.33 proceeds or avails of the life insurance were, by Act No. 189 of 1914, p. 356 (amended and re-enacted by Act No. 88 of 1916, p. 206) exempt from liability for any debt, she placed the amount on her final account to the credit of the minor children, and asked that the account be approved.

The account was contested by the Bank of Minden, holding promissory notes for the sum of $1,825, signed by the deceased, and by the Bank of Webster, holding a promissory note for $600, signed by the deceased. The account was contested also by Robert Roberts, Jr., indorser of the $600 note. Opponents

contended that the proceeds or avails of the life insurance should be applied to the debts due the banks.

Although the notes were issued and dated subsequent to the enactment of the statute of 1916, they were given as renewals of notes of the same tenor, representing debts contracted by the deceased prior to the enactment of the statute of 1914. Opponents contended that the proceeds or avails of the life insurance could not be held exempt from liability for the debts contracted previous to the enactment of the statute of 1914, without giving the statute the retroactive effect of impairing the obligation of a contract, in violation of section 10 of article 1 of the Constitution of the United States and article 166 of the Constitution of this state. Judgment was rendered in favor of opponents, declaring the proceeds or avails of the life insurance liable for the debts due the banks; and the tutrix of the minor children prosecutes this appeal.

### Opinion.

By Act No. 189 of 1914, p. 356, the proceeds or avails (and by the amending Act No. 88 of 1916 the dividends) of all life insurance, fraternal and co-operative, health and accident insurance, were declared "exempt from all liability for any debt, except for a debt secured by a pledge of such policy, or any rights under such policy that had been assigned, or any advance payments made on or against such policy." The effect of the law was to exempt from liability for debts due by the assured the proceeds or avails of life insurance made payable to the executors, administrators, or assigns of the assured. See Succession of Le Blanc, 142 La. 27, 76 South. 223, L. R. A. 1917F, 1137. In that case it was held that the statute of 1914 exempted the proceeds or avails of life insurance collected on policies issued previous to the enactment of the law from liability for debts contracted subsequent to the

enactment, and that such application of the law did not violate the constitutional restriction against laws impairing the obligations of contracts.

Conceding, as we do, that, according to the decisions of this court, the banks' acceptance of the renewal notes did not operate as a novation of the debts due the banks, our opinion is that canceling the old notes and taking new ones must have an important bearing upon the case. Because, assuming, as we must assume, that the bank officials and the indorser of the $600 note knew of the enactments of 1914 and 1916, the indorsing by the one and accepting by the others of new notes, after the statute of 1914 and of 1916 had gone into effect, indicated that the indorser and the bank officials did not regard the liability of the proceeds or avails of any life insurance as a part of their debtor's obligation. It is highly probable, if not quite certain, that the indorser and the bank officials would not have done away with the prima facie evidence that the debts were contracted previous to the enactment of the statute of 1914, if there had been any obligation on the part of the debtor that would be impaired by the statute of 1914, without proof of the origin of the debts.

As a matter of fact, there was no obligation on the part of the debtor to maintain insurance on his life for the benefit of his creditors, or in favor of his executors, administrators, or assigns. There was no pledge or assignment of the policies, nor lien in favor of opponents. They testified that the deceased told them, when the loans were made, that his life was insured in favor of his estate, for an amount sufficient to protect all of his creditors. But it is not pretended that the life insurance formed a consideration or inducement for making the loans, or that the debtor was under any obligation to maintain insurance on his life, for the protection of his creditors. He was at liberty to

let the policies lapse, or to change the beneficiaries, at any time. Hence the insurance in favor of the executors, administrators, or assigns of the debtor was of little or no protection to his creditors, even before the statute of 1914 was enacted. There is no proof that either of the policies then had a cash surrender value. It is apparent that the $3,000 policy in the Penn Mutual had no cash surrender value before the statute of 1914 went into effect, because the policy was then only three months old. It may be that the $1,500 policy, which was not introduced in evidence and is therefore not in the record, had a cash surrender value before the statute of 1914 went into effect; but that policy afterwards lapsed for nonpayment of the premium, and the sum collected by the administratrix was the amount due for paid-up insurance.

It cannot be said that the statute of 1914 impaired any obligation on the part of the debtor, in this case, to maintain insurance on his life for the protection of his creditors, because he was never under such obligation. If the statute, by exempting from liability for his debts the proceeds or avails of any life insurance that the debtor might have in force at the time of his death, impaired the creditor's remedy for enforcing the obligation of the debtor to pay his promissory notes, the impairment was then indeed only contingent and very remote. For it would be beyond all reason to assume that the bank officials or the indorser of the $600 note had in mind, when these notes were negotiated, before the passage of the act of 1914, the remote possibility of having to collect the proceeds or avails of any life insurance that might be in force at the time of the death of the debtor.

It is now well settled by the decisions of the United States Supreme Court and of this court that a law exempting property from seizure may impair an obligation that was contracted by the debtor before the law went into effect, provided the obligation or debt was not already converted into a judgment or secured by a mortgage or lien. See Blouin v. Ledet, 109 La. 711, 33 South. 741, and the decisions there cited. A contrary doctrine has been applied by the courts of some of the states to laws exempting the proceeds or avails of life insurance from liability for debt. See Rice v. Smith, 72 Miss. 42, 16 South. 417, Skinner v. Holt, 9 S. D. 427, 69 N. W. 595, 62 Am. St. Rep. 878, and In re Heilbron, 14 Wash. 536, 45 Pac. 153, 35 L. R. A. 602, cited in 12 C. J. 1076. However logical the decision may have been in each of the cases cited, we do not consider the ruling applicable to the facts of the case before us. The question whether the obligation of a contract has been impaired by a state statute of exemption is a federal question, for a decision of which the United States Supreme Court is our guide. Each case must be considered on its own facts; and the validity or invalidity of each statute, as applied to an antecedent contract, depends upon whether the exemption has impaired the obligation itself of the pre-existent contract or has only slightly and remotely affected the means or remedy of enforcing the obligation. 12 C. J. pp. 1075, 1076, No. 748. In the case before us, the impairment of the remedy or means of enforcing the obligation of the pre-existent contract, by the exemption allowed by the statute of 1914, was too remote to be regarded as a violation of the Constitution.

The judgment appealed from is annulled, and it is now ordered, adjudged, and decreed that the demands of the opponents be rejected at their cost, and that the proceeds or avails of the life insurance in contest be held exempt from liability for the debts due to the Bank of Minden and the Bank of Webster.

DAWKINS, J., concurs in the decree.

PROVOSTY, J., concurs in the decree, for the reasons that the policies had no market

value at the time the note was executed, and that the debtor did not obligate himself to keep the policies alive.

MONROE, C. J., dissents.