THOMPSON, J.
 

 Marshall Aronson died in this city on May 4, 1927, leaving surviving him a widow and two daughters. His estate consisted of household and kitchen effects and an automobile, all appraised at $2,229. He carried on his life several policies of insurance, aggregating in amount the sum of $14,-167.87.
 

 The widow qualified as administratrix of the estate, and thereafter obtained an order for the sale of all of the household effects, and which brought $1,500. She collected $129.20 as fire loss, which brought the receipts to $l,r 629.20 for distribution, exclusive of the insurance.
 

 In due course the administratrix filed what purported to be a final account of her administration, in which she charged herself with the amount stated, $1,629.20, and took credit for an equal amount composed of items for medical services in last illness, funeral expenses, and law charges. There was nothing left for creditors, and, in fact, no creditors of the deceased nor creditors of the estate other than as stated were placed on the account.
 

 A memorandum was added to the account showing an allocation of one half of the insurance to the widow and the other half to the two daughters.
 

 The account, after publication of the required notice, was homologated on July 9, 1928, and the administratrix was discharged on July 17, 1928.
 

 On July 20th the Whitney Central National Bank presented an application for a devolutive and suspensive appeal from said judgments, which the court granted, and which were perfected by giving the bond and timely filing the transcript in this court.
 

 The right of a creditor who ha.s not opposed an account of the administrator to appeal from the judgment of homologation is not contested by appellee.
 

 Nor is it contended that a judgment of homologation without opposition is conclusive against creditors appealing therefrom, where the account contains illegal and excessive charges, and has been homologated on insufficient and improper evidence.
 

 The evidence shows that shortly after the death of Aronson the appellant by its attorneys notified the attorneys for the succession that it held notes against the deceased, Aron-son, and requested to he advised when the succession would be opened. On August 18, 1927, the attorneys for the succession wrote the attorneys for the appellant that the succession would be opened within the next few days. The application for administration was filed on September 10th, but the appointment was not made until January, 1928.
 

 In the meantime, and before the appointment, the attorneys for appellant again wrote the attorneys for the succession that they desired to file with the administratrix the claim of the Whitney Bank, being three notes of Aronson fully deseribéd and amounting to $625. On the day following the receipt of this letter, the attorneys for the succession wrote the attorneys for appellant that the claim would be duly filed with the administratrix.
 

 The claim was never accepted by the administratrix and filed as a claim against the estate, and was not placed on the final account as a debt against the estate. The account was filed, homologated, and the administratrix discharged without any further
 
 *892
 
 correspondence with the attorneys for appellant, and without any notice except the ten days’ publication required by law.
 

 There is no claim made on the part of appellant to be paid out of the insurance money. The insurance, though the policies were in.favor of'the deceased, his executors and legal representatives, formed no part of his estate, and should not have been included in the administration. It was expressly exempted from liability for the debts of the deceased and of his estate by Act No. 189 of 1914.
 

 The contention of the appelladt is that the . account filed is not a true account, that it contains illegal and excessive charges, and that the homologation was based on insufficient evidence.
 

 . _ The record supports this contention. As already noted, the items of credit on the account, summed up, balance exactly the amount of funds in the hands of the administratrix. It is entirely possible for this to have been a mere coincidence or an accident, and not made purposely or designedly, but somehow it is just a little difficult to believe that it just so happened.
 

 There does not appear to be any vouchers to support the items referred to, except one general receipt containing certain names and amounts placed opposite such name, and-purporting to acknowledge payment of said amounts as per the final account. There is no proof whatever of the verity of these items or that they were due and owing by the estate.
 

 The only other evidence is that of one of the attorneys representing the succession, who testified that he handled the collection of all the funds, and particularly those arising from the insurance policies and the sale of the movable effects. He prepared the account, and swore that it was correct; that it contained all the receipts, and provided to the best of his knowledge for disbursements according to law.
 

 We hardly think this testimony even makes prima facie proof of the correctness of the items for which the accountant claims credit. The statement was a mere conclusion of the witness, and did not give any details of facts which would establish the liability of the estate for the various items listed.
 

 An administrator’s account' which does not specify the debts and fully set forth all facts dealing with assets and liabilities is not a true account, and cannot be homologated as such. Succession of Lacroix, 29 La. Ann. 366.
 

 But, even more than this, a simple inspection of the account shows improper, illegal, and excessive charges.
 

 The sale of the effects of the succession realized $1,500, and yet there is an item of auctioneer’s commission and expenses of $95.-10 which is more than 6 per cent, on the proceeds of the sale.
 

 There is an item of $175 as notary fee for two inventories, one of which was unnecessary, that for the insurance, which formed no part of the assets of the succession, and the fee for which could not be charged against the actual funds of the succession. Nor could one-half of the charge for the two inventories ($87.50) be said to be a legal charge, for the inventory on its face shows that it was begun and completed on the same day. We are cited Act No. 101 of 1870, which fixes the fees of recorders and notaries public for their services in making inventories in and away from their office. If this statute is still in force, and we have not been cited any statute to the contrary, then the charge of even $87.50 for the only inventory required is manifestly excessive and contrary to law.
 

 And the same may be said of the charge
 
 *894
 
 of $150 for appraisers’ fees for two inventories.
 

 Again our attention is called to Act No. 33 of 1870 which fixes the fee of appraisers appointed to assist in taking inventories of succession property. Under the. terms of this statute, the fee of $75 for appraising the property contained in the one necessary inventory is largely excessive, and hence illegal.
 

 Another item which is complained of as excessive is that of $550 for attorneys’ fees, which is more than 33% per cent, of the actual fund in the hands of the administratrix, and more than 24 per cent, of the inventory of the succession property.
 

 If the fees charged were for legal services rendered the estate other than the collection of the'insurance, then the fee is glaringly excessive. On the other hand, if the fee is intended to pay for legal services in connection with the insurance, then to such extent it was improperly charged against the funds of the estate.
 

 The fee should be reduced to such an amount as will be commensurate with the services rendered to the estate proper and taking into consideration the amount of property administered as the property of the estate and excluding the insurance.
 

 There is another item of $5 for emancipating the youngest of the two girls.
 

 This admittedly is not a proper charge against the funds of the succession. This • item should be disallowed, and the fee of the auctioneer and that of the notary for taking the inventory of the succession property and the fee of the appraisers for assisting should be reduced to the amount as fixed by law. The fees of the notary and of the appraisers for taking the second inventory covering the life insurance should be disallowed.
 

 The five items to which we have made special reference, and which are all law charges, absorb approximately 60 per cent, of this small succession, and with the other items on the account cut off the appellant and other creditors from any participation in the funds of the succession.
 

 As the case will have to be remanded to permit the appellant to present and make proof of its claim, and to oppose such items of the account as may be illegal and excessive, we shall leave the recasting of the account to the court below.
 

 It is therefore ordered and decreed that the judgment of homologation appealed from, as well as the judgment discharging the administratrix and canceling her bond, be and they are annulled and set aside and the case is remanded to the lower court to be proceeded with in accordance with this opinion.
 

 The cost of the appeal to be paid by the administratrix.
 

 ROGERS, J., takes no part.