**(126 So. 223)**

**No. 29946.**

**Succession of ERWIN.**

Jan. 6, 1930.

Rehearing Denied Feb. 3, 1930.

Borron, Hebert & Owen, of Plaquemine, for appellants.

Schwing, Morrison, Schwing & Obier, of Plaquemine, and Francis J. Whitehead, of Port Allen, for appellees.

THOMPSON, J. This is an appeal by two creditors from a judgment which rejected their opposition to a final account filed by the administratrix.

The question presented is whether the said creditors are entitled to be paid the balance of the proceeds or avails of life insurance policies in preference to the legal heirs of the deceased insured, to whom the administratrix in her final account proposed to distribute the said insurance money.

William L. Erwin died intestate in the parish of Iberville June 21, 1928, leaving no widow and no descendants or ascendants, but was survived by two paternal uncles and two paternal aunts. His property at the time of his death consisted of a small amount of personalty, rights, and credits. He also left several policies of life insurance payable to his executors, administrators, or assigns. The estate was admittedly insolvent.

Mrs. Freddie Robertson Killingsworth, a cousin and creditor of the deceased, was appointed administratrix without opposition.

In due course she filed a final account in which she charged herself with funds collected for the estate amounting to $740.57 and with the net proceeds of the life insurance policies amounting to $8,858.78.

The expenses of last illness, the funeral charges, law charges, and salary of a clerk amounted to $2,044.13.

The account was later amended by placing thereon for payment a claim in favor of Dr. Eshleman for $160 and of Mrs. Robertson for services as nurse amounting to $50.

After taking credit for the amounts stated, the administratrix proposed to pay the balance shown on her account to the four heirs referred to.

Oppositions were filed by several creditors of the deceased, including the two appellants and the sheriff and tax collector, who claimed an inheritance tax of $44.44 on the distributive share of each of the heirs.

There was no complaint as to the regularity of the proceeding nor as to any of the items on the account which the administratrix had paid or proposed to pay as debts of the estate.

All of the oppositions, except that of the tax collector, were directed against the proposed payment to the heirs of the balance of the insurance money.

On a trial all of the oppositions were rejected except that of the tax collector, and the account as amended was duly homologated, and the funds as stated in the original and supplemental account were ordered distributed as therein proposed.

That judgment is now final as to all parties thereto except the two appellants herein.

When the administratrix collected the insurance policies and the small amount of debts due the estate, she deposited the same in the bank to the credit of her account as administratrix, and one of the contentions of appellants is that, when the insurance money was deposited confusedly with funds of the estate, the insurance money lost its identity and ceased to be exempt from the debts of the deceased.

It might suffice to say in answer that no such claim was made in the oppositions filed, and, so far as the record shows, it was made for the first time in the brief filed by appellants in this court.

However we may say that the contention has no merit. The insurance money constituted practically the entire fund which came into the hands of the administratrix. The only other fund was about $700.

The law fixed the status of the insurance so far as creditors were concerned, and to maintain that status it was not necessary to deposit the money in a separate account of the administratrix. If the insurance was exempt from debt, it retained that exemption as against the creditors when deposited in the bank.

Of course as against the bank or as against other depositors of the bank, it might very properly be said that the particular fund could not be claimed because, being mingled with other funds in the bank, its peculiar character and special identity was lost.

So if the heirs here were seeking to recover from an insolvent bank the particular deposit in preference to other depositors and creditors, the appellants' contention might be a sufficient answer. Young v. Teutonia Bank, 135 La. 66, 64 So. 984; Sabine Canal Co. v. Crowley Trust & Savings Bank, 164 La. 38, 113 So. 754.

But that is not the situation here, and appellants' contention cannot be brought within the rule laid down in the cases cited.

▮ Another contention made by appellants is that the fund should be paid over to the creditors because the heirs have not specially claimed the insurance money. ·

The answer to this contention involves the interpretation of Act No. 189 of 1914, as amended by Act No. 88 of 1916. If under the statutes referred to the insurance money belongs to the heirs and is not liable for the debts of the insured, then the creditors have no interest in urging the failure of the heirs to claim the insurance. If the creditors have no claim on the fund, they certainly cannot control the disposition of the fund.

The statute in question provides that the proceeds or avails or dividends of all life, including fraternal and co-operative, health and accident insurance, shall be exempt from all liability for any debt, except for a debt secured by a pledge of policy or any rights under such policy that may have been assigned, or any advance payments made on or against such policy.

There is no ambiguity in the language used, and scarcely any room for interpretation.

The plain meaning is that the avails or proceeds of an insurance policy are exempt from the debts of the insured—cannot be made subject to the payment of his debts. In other words, the creditors have no claim whatever on the insurance, whether the heirs make claim or whether there are no heirs.

The statute has been before this court for consideration several times.

In Succession of Le Blanc, 142 La. 27, 76 So. 223, 226, L. R. A. 1917F, 1137, it was contended that the mere fact that life insurance is made payable to the administrators, executors, or assigns of the assured implies that the proceeds or avails are liable for the debts to be paid by the executors or administrators, but the court held that the Legislature did not intend that the making of life insurance payable to the estate, the executors, administrators, or assigns of the assured should be regarded as a pledge or an assignment of the proceeds or avails of the insurance to the creditors.

It was also attempted in that case, as it is here, to liken the exemption of insurance to the homestead exemption, in that it is personal to those in whose favor it is granted. The court, however, held that the exemption of insurance, unlike the homestead exemption, is not granted in favor of or expressly confined to, any particular person or designated class of persons or individuals.

The court in the cited case said further:

"The terms of the statute are sufficiently broad and comprehensive to exempt the proceeds or avails of life insurance from liability for debts due by the succession for the insured after his death, as well as to exempt the cash value or surrender value of policies of insurance during the lifetime of the insured. In fact it is difficult to conceive of more comprehensive or plainer language than the Legislature has used to exempt from liability for the debts of the * * * insurance paid or payable to his estate, his executors or administrators." See, also, Succession of Clement, 146 La. 385, 83 So. 664.

In Succession of Aronson, 168 La. 887, 123 So. 608, it was held that life insurance formed no part of deceased's estate, and should not have been included in the administration, though policies were in favor of deceased, his executors and legal representatives, since it was expressly exempted from liability for

debts of deceased and of his estate by Act No. 189 of 1914.

The statement there made might perhaps have been too broad, but it was peculiarly appropriate in that case, for the reason that the bringing of the insurance into the administration was for the obvious purpose of increasing the law charges to such an extent as to absorb all of the funds of the estate other than the insurance, thereby leaving nothing for the creditors.

What the court meant to say was that the proceeds or avails of life insurance policies with respect to creditors and quoad the creditors of the insured, formed no part of the estate of the deceased.

In view of the statute and the decisions of this court referred to, it cannot be regarded as a debatable question any longer, that the proceeds or avails of life insurance policies are not and cannot be made liable for the debts of the insured, and the creditors of the deceased insured have no interest in the disposition made or to be made of such funds.

Having reached this conclusion, the authorities cited, to the effect that life insurance in favor of the estate, the executors, etc., forms a part of the estate and is liable for the debts of the insured, are inapplicable since Act No. 189 of 1914, and it is unnecessary to discuss them.

Nor is it necessary to review those authorities relating to homestead exemptions. Of course, where the homestead exemption is lost, the property which is the common pledge of the creditors becomes liable for the debts of the homesteader.

But that is not true with respect to insurance which is not and cannot be made liable for debts of the insured so long as it retains the status and character of "proceeds and avails" of life insurance.

The views expressed also render it unnecessary to discuss the authorities cited to the effect that heirs must make themselves parties to the account and cannot be decreed by the court to be paid the insurance unless they claim it. The effect of the judgment is but to declare the heirs entitled under the law to be paid the insurance, and, if they neglect to take it or are unwilling to take it, the money will not belong to the creditors.

■ The appellants in their oppositions claimed a pledge on the proceeds of one of the policies, but they have not referred to the claim in their briefs; hence we assume that the claim has been abandoned. However the lower court found there was no pledge established, and the record sustains that conclusion.

For reasons assigned, the judgment appealed from is affirmed.

O'NIELL, C. J., absent.
ROGERS, J., dissents.