## Succession of HEDDEN.*
### No. 14061.

Court of Appeal of Louisiana. Orleans.

April 4, 1932.

Montgomery & Montgomery, of New Orleans, for appellant.

Earl K. Long and Nicole E. Simoneaux, both of New Orleans, for inheritance tax collector.

JANVIER, J.

This case presents but one question, i. e.: Are proceeds of a life insurance policy payable to a deceased's estate and inherited by an heir exempt from liability for inheritance taxes?

No controversy over facts is involved.

Act No. 127 Ex. Sess. of 1921 provides for a tax upon all inheritances and donations and gifts made in contemplation of death, except certain ones, with which exceptions we are not now concerned.

In 1914, the Legislature of Louisiana passed Act No. 189, which, to use general terms, exempted the proceeds and avails of life insurance policies from liability for any debt.

Act No. 88 of 1916 was a re-enactment of the act of 1914, except that in the later act there were exempted not only the proceeds and avails of all life insurance policies, but also the dividends declared on all such policies. The act of 1916 reads as follows:

"Section 1.—Be it enacted by the General Assembly of the State of Louisiana, that Act No. 189 of the General Assembly of 1914 be amended and re-enacted so as to read as follows:

"An Act to exempt the proceeds or avails or dividends of all life, including fraternal and co-operative, health and accident insurance from liability for debt.

"Section 1.—Be it enacted by the General Assembly of the State of Louisiana, That the proceeds or avails or dividends of all life, including fraternal and co-operative, health and accident insurance shall be exempt from all liability for any debt, except for a debt secured by a pledge of policy, or any rights under such policy that may have been assigned; or any advance payments made on or against such policy.

"Section 2.—Be it further enacted, etc., That all laws or parts of laws in conflict herewith be and the same are hereby repealed.".

Even before the enactment of the exemption statutes of 1914 and 1916 it had been held in Louisiana, as in practically all other American jurisdictions, that proceeds of life insurance policies payable directly to named beneficiaries could not be subjected to the claims of creditors of the insured.

"The proceeds of a policy of life insurance, payable otherwise than to the assured or his estate, belong to the beneficiary, form no part of the estate of the assured, and are not liable for his debts or subject to community rights, or to reduction or collation." Ticker v. Metropolitan Life Ins. Co., 11 Orl. App. 59 (syllabus on rehearing).

See, also, Succession of Bofenschen, 29 La. Ann. 711; Successions of George and Frances Clark, 27 La. Ann. 269; Succession of Hearing, 26 La. Ann. 326.

Since the enactment of the two statutes referred to, the exemption from liability for debt of the proceeds of policies payable directly to named beneficiaries has, of course, become even more firmly established.

*Rehearing granted May 2, 1932.

The soundness of the doctrine that proceeds of life insurance policies payable directly to named beneficiaries cannot be subjected to the payment of debts is conceded by the attorneys for the collector of inheritance taxes. They contend, however, that, where the proceeds of such policies are payable to the estate of the assured, a different rule must prevail; that where there is a designated beneficiary no inheritance is involved, but only a direct contract payment as stipulated in the insurance policy, whereas, in the case where the legatee takes the insurance proceeds not as the party named in the contract as beneficiary, but solely as heir, there is an inheritance and the tax on the right to inherit is due.

If the payment of the inheritance tax could be considered as an obligation of the estate, or of the deceased, then it would seem futile to contend that proceeds of such policies as those involved here could be taxed, because then it would be apparent that the tax would be a debt of the insured, or of his estate, and, as such, it would not be collectible out of the proceeds of the policies.

But it is no longer debatable that inheritance taxes are not debts due by the deceased, or by his estate, and it is well settled that such charges are imposed upon the heir as a privilege tax upon the right to inherit. In the syllabus in Succession of Pargoud, 13 La. Ann. 367, appears the following:

"The tax * * * required by the Act of March, 1855, sec. 7 * * * is not a debt due by the succession, but is simply a debt due by the heir. * * *"

In Succession of Cotton, 172 La. 819, 135 So. 368, 371, it was said that: "The tax is upon the right to take and receive the legacies and not upon the right to give or bequeath them, and hence the tax must be borne by the legatees."

The attorneys for the inheritance tax collector are confident that proceeds of life insurance policies payable to the estate of the deceased, or to his administrators or executors, form part of the estate, and that the whole question here involved depends upon the correctness of such view.

Counsel for the executrix and for the universal legatee likewise attach much importance to this legal question of whether the proceeds form part of the estate, but they differ from their adversaries as to the correct answer to the question, maintaining that in Succession of Aronson, 168 La. 887, 123 So. 608, 610, the Supreme Court settled the matter when it said:

"The insurance, though the policies were in favor of the deceased, his executors and legal representatives, formed no part of his estate, and should not have been included in the administration."

Counsel for the collector admit that, so far as the creditors of an estate are concerned, the insurance money forms no part of such estate, but maintain that, as to heirs, the rule is just the reverse, and that such proceeds are part and parcel of the property composing the mass which passes by inheritance, and is, thus, part of the estate; and as authority for their view they call attention to Succession of Erwin, 169 La. 878, 126 So. 223, 224, and Succession of Cotton, 170 La. 828, 129 So. 361, 363. In Succession of Erwin and in Succession of Cotton, the Supreme Court referred to the Succession of Aronson and stated that all that was therein decided was that, as to creditors of the insured, proceeds of insurance policies do not form part of the estate, since such proceeds could not be seized by the said creditors, being especially exempted by the statute of 1914, and, we now add, by the statute of 1916.

In Succession of Erwin the court said:

"The plain meaning is that the avails or proceeds of an insurance policy are exempt from the debts of the insured—cannot be made subject to the payment of his debts. In other words, the creditors have no claim whatever on the insurance, whether the heirs make claim or whether there are no heirs. * * *

"The statement there made might perhaps have been too broad, but it was peculiarly appropriate in that case, for the reason that the bringing of the insurance into the administration was for the obvious purpose of increasing the law charges to such an extent as to absorb all of the funds of the estate other than the insurance, thereby leaving nothing for the creditors.

"What the court meant to say was that the proceeds or avails of life insurance policies with respect to creditors and quoad the creditors of the insured, formed no part of the estate of the deceased."

In Succession of Cotton we find the following:

"In Succession of Aronson, 168 La. 887, 123 So. 608, we said that insurance payable to executors and administrators formed no part of the estate and should not have been included in the administration because such insurance could not be made to respond to the debts of the deceased.

"In that case the insurance was included in the administration for the very obvious purpose of increasing the assets of the succession so as to meet law charges to such an extent as to absorb all of the funds properly belonging to the succession and thereby leave nothing for the creditors.

"In the later case of Succession of Erwin, 169 La. 877, 126 So. 223, we said that what the court meant in the Aronson Succession was that the proceeds or avails of life insurance policies with respect to creditors and

quoad the creditors of the insured formed no part of the estate of the deceased. * * *

"We imagine that no case can be found where the court has held that an insurance policy payable to the executors and administrators and where no creditors were involved, did not form a part of the estate of the insured and could not be disposed of by the insured by last will and testament."

It is our opinion, in view of the above authorities, that where policies of life insurance are made payable to estates, or to executors or administrators, the proceeds thereof, when paid, are not liable for debts, and thus, so far as creditors are concerned, form no part of the respective estates, but, so far as heirs are concerned, are properly to be considered as part of such estates. Whether the proceeds of insurance in such cases may be considered as part of the estate to the extent that they may be looked to to pay their respective portions of the cost of administration, is a question not necessary for us to decide, but which seems to have been settled in the negative in Succession of Aronson, supra. If the question were not squarely decided in that case, then, at least, the reasoning therein renders any other decision by us impossible.

But, even if the proceeds of such policies do form part of the estate, so far as the heirs are concerned, it does not necessarily follow that such proceeds are liable for inheritance taxes, because the exemption statutes are so broad that they appear to exempt the proceeds of policies of life insurance from all debt, whether of deceased, or of his estate, or of the heir into whose hands they ultimately come.

Nowhere in either of the statutes do we find anything to limit the exemption to the debts of the insured, or of his estate. The purpose of both acts is to provide that all funds arising out of such policies shall be "exempt from all liability for any debt."

Although in several instances the Supreme Court used words which, had the question been involved, might have indicated a view that the exemption was to extend to debts of the insured only, nevertheless, since, in every such case, only debts of the insured or of his estate were involved, it is clear that it was not intended to announce any such limitation, or to distinguish between debts of the insured and debts of his heirs.

For instance, in Succession of Erwin, supra, the Supreme Court said:

"The plain meaning is that the avails or proceeds of an insurance policy are exempt from the debts of the insured—cannot be made subject to the payment of his debts."

But there was in that case no question depending upon the distinction between a debt of the insured and a debt due by the heir.

Similarly, in Succession of Aronson, supra, the Supreme Court said, with reference to the proceeds of insurance policies, that they were "expressly exempted from liability for the debts of the deceased and of his estate by Act No. 189 of 1914."

There again no question was involved dependent upon a distinction between the debt of the insured and the debt of the heir.

The words "of the deceased and of his estate" were unnecessary and they do not, as might be indicated by the whole quotation, appear in the act of 1914. Nor do we find them in the act of 1916.

█ It must be conceded that upon first consideration it may appear that to place upon the exemption statutes so broad an interpretation is to extend the meaning of those acts beyond the limits intended by the framers thereof. There are two answers to this suggestion. The language is plain and without ambiguity, and it is, therefore not necessary that we look beyond the letter of the law in an effort to ascertain the intention of the makers thereof.

In City of Shreveport v. Southwestern Gas & Electric Co., 140 La. 1078, 74 So. 559, 561, we find that:

"Occasions may now and then arise when, from some necessity to make particular statutes intelligible and operative, courts will correct or ignore obvious inadvertences therein, but it should never be forgotten that the power to make the laws is not vested in the judiciary, that, when the department in which that power is vested has expressed itself in unambiguous language, the presumption arises that it intended that which the language imports, and that in this state it has prescribed for the judiciary and the public at large a rule of interpretation which is expressed in language of that character, to wit:

"'When a law is clear and free from all ambiguity, the letter of it is not to be disregarded under pretext of pursuing the spirit.' Civ. Code, art. 13. Walker v. Vicksburg, S. & P. Railroad Co., 110 La. 718, 34 So. 749."

The statutes exempt the proceeds from liability for "any" debt. May we go beyond that? We think not.

But if we may seek to ascertain what the Legislature intended, and if we may attempt by interpretation to limit the plain language of the statutes, it is far from certain that the intention of the framers of the statutes was not properly expressed in the words quoted because, when those statutes were enacted, there had been passed by other Legislatures similar exemption statutes as broad as those under consideration, and our own Supreme Court, in Succession of Le Blanc, 142 La. 27, 76 So. 223, L. R. A. 1917F, 1137, referred at length to a decision of the Supreme Court of California (Holmes v. Marshall, 145 Cal. 777, 79 P. 534, 69 L. R. A. 67, 104 Am. St.

Rep. 86, 2 Ann. Cas. 88), in which that court held that a legislative enactment exempting from execution "all moneys, benefits, privileges, or immunities accruing, or in any manner growing out of life insurance" extended its protection to insurance proceeds paid under a policy in favor of deceased's estate and exempted such proceeds even in the hands of the heir from all debts, whether of the deceased or of his estate or of the heir, so long as those proceeds retained their identity as avails of an insurance policy.

The same rule was followed to some extent, though in industrial and fraternal insurance matters, in Kentucky and in Minnesota.

It is true that in Succession of Le Blanc, 142 La. 27, 76 So. 223, 227, L. R. A. 1917F, 1137, our Supreme Court said:

"It is not necessary to apply the exemption, in the case before us, to the extent to which it was applied under the statutes of Kentucky, Minnesota, and California."

■ Nevertheless, we cannot but read the discussion as contained in the opinion in the Le Blanc Case without realizing that the discussion itself is an approval of the doctrine followed by the California, Minnesota, and the Kentucky courts. Furthermore, the decisions of those courts had been rendered prior to the enactments of the statutes in question, and it is a fair assumption that, when the members of our Legislature adopted the said statutes, they were aware of the interpretation that had been placed by similar courts on similar enactments, and that they intended that those interpretations should be placed upon the statutes passed by them.

"It is the well settled general rule that when a statute has been adopted from another state or country, the judicial construction already placed on such statute by the highest courts of the jurisdiction from which it is taken accompanies it, and is treated as incorporated therein." Ruling Case Law, Vol. 25, § 294, Verbum "Statutes."

■ That the statutes under consideration were not copied verbatim from those which had been interpreted by courts of other states is of no importance in applying the rule of statutory construction above quoted, because, as has been pointed out by Mr. Justice Story in Pennock et al. v. Dialogue, 2 Pet. 1, 7 L. Ed. 327, it is not essential that the statute under consideration be identical with that which has already been interpreted by some other court, in order to warrant the assumption that the earlier interpretation placed upon the earlier statute by the other court was taken into consideration by the lawmakers in adopting the later statute.

In that case (Pennock v. Dialogue), although it was said that "the language of that clause of the statute is not, as we shall presently see, identical with ours," nevertheless the court, in construing a clause in a United States statute, considered the interpretations placed by English courts on similar enactments in England.

In his well known work on "Executions" in the Third Edition, volume 2, § 234 (b), Freeman criticises the Kentucky and Minnesota decisions referred to in the Succession of Le Blanc, but the reasons given by him strongly support the view which we now adopt. Mr. Freeman says that in those decisions the result was incorrect because the statutes there did not stop with the words "exempt from execution," and he states that there would be no doubt of the exemption in favor of the beneficiary, or of the ultimate receiver of the funds, except for the fact that the language used in the respective statutes limited the exemption to the debt or liability "of a member," and, as said by our Supreme Court in Succession of Le Blanc, if the exemption had been general and had not been limited to the debt of any particular person, it seems to follow "that the Legislature had in mind only the debts or liabilities of the members of the insurance association, and hence, after the benefit was received by a beneficiary other than the member insured, it was subject to the general laws relating to executions or liability for debts of the person or persons who had received the benefit."

Our statutes, as we have said, are general, contain no limitations, and thus it would follow that the proceeds of the policies, as long as they may be identified, are protected by the exemption, in whosesoever hands they may be found.

In Succession of Geier, 155 La. 167, 99 So. 26, 32 A. L. R. 353, our Supreme Court held that the proceeds of a policy of United States government war risk insurance could not be subjected to the payment of a state inheritance tax. There the named beneficiary had died and the proceeds were payable, under the federal statute under which the policy had been issued (War Risk Insurance Act Sept. 2, 1914, 38 U. S. Stat. 711 as amended by Acts June 12, 1917, and Oct. 6, 1917, 40 Stat. 102, 398) to his surviving father and brothers and sisters. Our Supreme Court said that the last-named relatives had received the proceeds not as heirs, but as beneficiaries, and therefore, and also because "the tax sought to be enforced is a tax upon money paid out by the government under the provisions of the War Risk Insurance Act * * *," the proceeds were held to be not subject to the inheritance tax.

We have well considered the suggestion that if our Supreme Court had been of the opinion that such proceeds are not taxable, whether received by beneficiaries or by heirs, they need not have taken the pains to point out that, in that particular case, they had been received by beneficiaries.

We do not think that such conclusion can be drawn because it is evident that the non-

liability for inheritance taxes was based primarily on the fact, as quoted in the opinion, that:

" 'It is not open to question that a state cannot, in the exercise of the power of taxation, tax obligations of the United States.' Plummer v. Coler, 178 U. S. 115, 20 S. Ct. 829, 44 L. Ed. 998."

Then, too, it is manifest, from a reading of the opinion, that the court did not intend to hold or say that, had the persons named received the proceeds as heirs, inheritance taxes would have been due, because, near the beginning of the opinion, the court asks two questions, the second of which reads as follows:

"If they [the relatives designated] receive as heirs, is the insurance exempt from the state inheritance tax?"

Nowhere in the opinion does the court undertake to answer this question.

Another reason for the opinion we have expressed results from the application of the view set forth by this court in Succession of Porter, No. 7887 of the docket (decided January 10, 1921, unreported [See Louisiana and Southern Digest]). There the proceeds of two life insurance policies were payable to a named beneficiary. The beneficiary died only a few days after the insured, and the proceeds of the two policies were collected by the executor of the estate of the beneficiary.

It was sought to subject the proceeds of the policies to liability for debts of the beneficiary; the argument being that the exemption statutes of 1914 and 1916 were applicable only to debts of the insured and did not grant immunity from debts of the beneficiary. The court said:

"The proceeds of a policy of life insurance payable otherwise than to the estate of the assured, have never formed part of that estate and hence have never been held liable for his debts. It follows therefore that no statute was necessary to exempt the proceeds of such policies from liability for the debts of the succession. Accordingly as to such policies the statute must have meant to exempt them from liability for the debts of the beneficiary, as being the only debts for which they ever were liable.

"The proceeds of a life insurance policy are therefore exempt from liability for the debts of the beneficiary, at least whilst they are kept apart and distinguishable from the rest of his property; and of course the heir of the beneficiary may set up that exemption as he himself might have done."

In other words, this court held that, where the policy is in favor of a named beneficiary, the statutory exemption from any debt means any debt of the beneficiary or recipient, as well as any debt of the insured. If, then, where there is a named beneficiary, the language is to be broadly interpreted so as to attach the exemption to the fund itself after it reaches the hands of the beneficiary, we do not believe that we may attach to the same language another and a narrower meaning, where there is no designated beneficiary.

That the words of a statute may not have two different meanings—one to fit one set of circumstances and a second meaning to apply in another case—was stated by this court in Morris McGraw Woodenware Co., Ltd. v. German Fire Insurance Co., 7 Orl. App. 138.

If the exemption granted by the two statutes in question is not personal to the deceased, or to the estate, but attaches to the fund itself, as we believe it does, then it follows the fund so long as it retains its identity.

Just how far this exemption should follow the proceeds is a matter not now before us, because it is conceded that here the fund remains intact and may be readily identified. In discussing such a situation as might be presented by the mingling of an exempt fund with other moneys not exempt, the Supreme Court, in Succession of Erwin, supra, said:

"When the administratrix collected the insurance policies and the small amount of debts due the estate, she deposited the same in the bank to the credit of her account as administratrix, and one of the contentions of appellants is that, when the insurance money was deposited confusedly with funds of the estate, the insurance money lost its identity and ceased to be exempt from the debts of the deceased.

"It might suffice to say in answer that no such claim was made in the oppositions filed, and, so far as the record shows, it was made for the first time in the brief filed by appellants in this court.

"However we may say that the contention has no merit. The insurance money constituted practically the entire fund which came into the hands of the administratrix. The only other fund was about $700.

"The law fixed the status of the insurance so far as creditors were concerned, and to maintain that status it was not necessary to deposit the money in a separate account of the administratrix. If the insurance was exempt from debt, it retained that exemption as against the creditors when deposited in the bank."

And in Holmes v. Marshall, supra, the question of identification of funds is interestingly discussed by the Supreme Court of California.

Just whether such a fund has been so mingled or confused with other moneys as to lose its identity is a question which must be settled according to the facts presented in each case as it arises. Here there was no mingling; no confusion resulted, and

therefore, since the fund is exempt from payment of any debt, no inheritance tax is due.

The author of this opinion desires to acknowledge indebtedness to Mr. Frank S. Normann of the New Orleans Bar for much assistance received in the selection and location of authorities from the industriously prepared and most interesting pamphlet written by Mr. Normann and entitled, "Insurable Interest and Right to Proceeds of Life Policies Generally, and as Governed by Louisiana Law." This paper is before us and forms a valuable addition to our library.

The judgment appealed from is annulled, avoided, and reversed, and it is now ordered, adjudged, and decreed that the proceeds and avails and dividends, if any, of all life insurance policies described in the petition be, and they are, exempt from liability for any inheritance tax.

Judgment reversed.