### Succession of BIBBINS. *
### No. 14835.

Court of Appeal of Louisiana. Orleans.

Feb. 12, 1934.

---

Normann, McMahon & Rouchell, of New Orleans, for appellant.

Chas. Mundy, of New Orleans, for appellee.

JANVIER, Judge.

This matter comes to us on two appeals taken by motion in open court by an alleged creditor of the succession of Albert Bibbins. Appellant contends that the judgment appointing the administratrix is an absolute nullity because the court in which the appointment was made was without jurisdiction ratione materiæ and was made on improper and informal proof. Appellant also appeals from the judgment homologating the account of the administratrix, which account did not show appellant as a creditor, and according to which account the entire fund in the possession of the administratrix was distributed to herself, as an alleged creditor of the estate, and to her attorney.

Appellant did not appear in any way in the succession proceedings until after both the judgments now complained of had been rendered. The reason for this seems to have been that its officials in the parish of Orleans were unaware of the fact that the succession had been opened in the adjoining parish of Jefferson.

Appellee moves to dismiss the appeals, asserting that the only funds belonging to the estate are the proceeds of life insurance policies, and that therefore, since those funds are exempt from liability for the payment of debts of the succession, the creditor cannot be heard to complain about the distribution of those funds no matter what may or may not have been shown on the account and regardless of who may have been appointed administratrix. This contention is based on Act No. 88 of 1916 which has been referred to in various cases, notably: Succession of Erwin, 169 La. 877, 126 So. 223; Succession of Dumestre, 174 La. 482, 141 So. 35; Nulsen v. Herndon, 176 La. 1097, 147 So. 359.

This contention of the appellee is not sound. If, as appellant corporation alleges, it is a creditor of the estate, it is interested in seeing the estate properly administered, and it is entitled to have its claim recognized, even though, in the final analysis, there may be no funds with which it may be paid.

It would not do to allow an administrator to dismiss an appeal by a creditor merely because in the opinion of the administrator there will be no funds for payment of the creditor's claim.

That appeal is the proper method by which to present to a superior court opposition to the confirmation of an executor or an

administrator was held in Succession of Downing, 122 La. 275, 47 So. 604.

■ That a creditor may raise the question of the jurisdiction of the court over the succession proceedings we entertain no doubt. In Miltenberger v. Knox, 21 La. Ann. 399, the Supreme Court considered a case in which it was contended that, because of lack of jurisdiction in the district court, the appointment of an administrator was a nullity. The court said: "The appointment therefore of Jones as administrator of both successions in said Parish of East Baton Rouge, was a nullity (C. C. 929; Succession of Williamson, 3 La. Ann. 261) and there was no one in court against whom Knox could obtain a judgment in the suit instituted by him. All the proceedings had in the attempt to open the said successions and recover judgment against them, having no legal foundation, were and are absolute nullities, and any creditor or party interested may oppose any process of court resulting from them which may affect their interests."

In Succession of Aronstein, 51 La. Ann. 1052, 25 So. 932, 933, it is said that: "One having an interest to oppose the application of another to open and administer a succession is not confined to merely resisting the application, on the ground of a better right in himself. He may go further, and resist the application, by raising the issue of a succession to administer, or that of necessity vel non of administration."

Surely it may have been added that he may also resist the application to appoint an administrator in a court without jurisdiction ratione materiæ.

In Taylor v. Williams, 162 La. 97, 110 So. 100, 101, the court, by inference at least, said that a creditor might raise a question of jurisdiction in succession proceedings. There the court refused to sustain objections by which the jurisdiction was sought to be overthrown, and the Supreme Court upheld its refusal, because such a contention, so the court said, cannot be made "by a mere trespasser or stranger, or by one who is neither an heir nor a creditor of the estate."

If one creditor may not raise the question of jurisdiction, then, in a case in which there are no heirs, and only creditors are interested, the first creditor who may learn of the death and who may go into some remote parish and open the succession may, if publication in that remote section escapes the notice of all other creditors, obtain payment in full of his debt and leave nothing for the other creditors.

■ The question is not whether the creditor will ultimately receive payment but whether the creditor may present its claim and have it recognized. Even if it be true that the only assets of the succession are the proceeds of the policies, still appellant has a right to insist that the succession be administered properly and by a legally qualified succession representative and in a court of competent jurisdiction.

In Mutual Life Insurance Company v. Houchins et al., 52 La. Ann. 1137, 27 So. 657, 659, the Supreme Court of Louisiana said:

"The merits, then, of this appeal, are not to be considered on the motion to dismiss, and to go into the questions raised in the last five grounds of the motion would be to go into the merits of the appeal itself.

"Indeed, the only question deemed now to be before the court is whether appellant is entitled to have the merits of her opposition to the judgment rendered in the court below between the parties to the suit hereafter considered.

"She has this right. * * *

"The true test is rather whether the third person asserts an interest in the res or subject-matter of the judgment. If so, she has the right of appeal.

"The motion to dismiss is denied."

■ Furthermore, even if appellant could not be heard to question the jurisdiction of the district court in appointing the administratrix, nevertheless, appellant was still within its right in appealing from the judgment homologating the account, since it was not placed on the account, and the record is therefore before us on that appeal. Since the record is before us, we can, as has been many times held, take cognizance, on our own motion, of the lack of jurisdiction ratione materiæ.

In Edwards v. Edwards, 21 La. Ann. 610, the Supreme Court said: "The court will notice of its own motion at any time the want of jurisdiction ratione materiæ." See, also, State v. Nicolosi, 128 La. 836, 55 So. 475.

Appellant is plainly an aggrieved third party and, as such, may, under article 571 of our Code of Practice, appeal from the judgments here complained of. The motion to dismiss the appeals is overruled.

Albert Bibbins died in New Orleans on February 28, 1933. Some time thereafter Lydia Harris presented, in the Twenty-Fourth judicial district court for the parish of Jefferson, a petition in which she prayed that she be appointed administratrix of the estate of Bibbins. In the petition it was alleged that the deceased had departed this life in New Orleans, but that he "was as much in the Parish of Jefferson as in any other parish of this State, he having no fixed place of abode."

There was no proof of death attached to the petition nor was the petition verified by the petitioner; the only affidavit having been made by her attorney on "information and belief." Publication was made in the parish of Jefferson, and, in due course, the applicant for letters of administration presented an-

other petition in which she alleged that the advertisement had been duly made and that no opposition to her application had been presented. Thereupon letters of administration were issued to her.

■ There was no inventory, petitioner alleging that none was necessary, and that the only assets of the succession were two life insurance policies payable to the estate. In qualifying as administratrix, Lydia Harris furnished bond which was signed as surety by Jemima Clay Tartt, a resident of the parish of Orleans.

Though the proceeds of the policy in question amounted to $1,448.34, the bond furnished by the administratrix was for only $1,500, and not, as required by article 1048 of the Civil Code, for "one-fourth over and above the amount of the inventory."

Various alleged irregularities are pointed to by the appellant. For instance, it is complained that no inventory was taken, although article 1049 of the Civil Code places administrators under "the same duties and responsibilities as the curators of vacant estates," and article 49 of the Code places upon the curators of vacant estates the "duty of causing a good and faithful inventory" to be made. We are shown no law which authorizes the administrator or administratrix to dispense with an inventory in a succession such as this.

The deficiency of the bond is also complained of, and it is very evident that, under the Civil Code article to which we have referred, 1048, the bond should have been for "one-fourth over and above" the amount of the property in the hands of the administratrix.

The surety on the bond of the administratrix is not a resident of the parish of Jefferson, and this is also complained of because, under article 3042 of the Civil Code, it is required that such a surety must be "a person * * * who is domiciled in the parish where the security is to be given." Although under the same article the judge having jurisdiction over the succession proceedings may accept as surety a person not residing in the parish, nothing appears in this proceeding to show that the matter was called to the attention of the judge and that in his discretion he accepted the present surety with knowledge of the fact that she did not reside within his territorial jurisdiction.

It is also shown that, although in the petition which was filed on September 8, 1933, it was alleged that the decedent left "no legal relatives that petitioner is aware of," the attorney who verified the petition had, on August 22, 1933, two weeks or so prior to the filing of the petition, written a letter in which he, referring to the said decedent, had stated, "I believe he had a daughter by another woman, whether legal or not, I do not know."

It also appears, as we have stated, that there was no proof of death attached to the petition, and we further notice that in the various documents sponsored by the petitioner, though her name was signed by mark, there were no witnesses to the mark.

Pretermitting, however, any further discussion of the irregularities in the proceedings, and overlooking for the moment the effect of those patent irregularities, our attention is immediately arrested by the very evident fact that is made to appear by the allegations of the petition of Lydia Harris herself, that there was not jurisdiction ratione materiæ in the district court for the parish of Jefferson.

Under article 929 of the Code of Practice and article 935 of the Civil Code, it is apparent that only the district court for the parish of Orleans was and is vested with jurisdiction of this estate. There is a slight difference in the wording of the two articles, and we therefore quote from both.

Article 929 of the Code of Practice reads as follows:

"The place in which a succession is opened is, and in future shall be held to be, as follows, notwithstanding any former law to the contrary:

"In the parish where the deceased resided, if he had a domicile or fixed place of residence in the State;

"In the parish where he left landed property, if he had neither domicile nor place of residence in the State; or in the parish in which it appears from the inventory that his principal property was situated, if he had property in several parishes;

"In the parish where he died, if he had no certain domicile nor any fixed property."

Article 935 of the Civil Code reads as follows:

"The place of the opening of successions is fixed as follows:

"In the parish where the deceased resided, if he had a fixed domicile or residence in this State.

"In the parish where the deceased owned immovable property, if he had neither domicile nor residence in this State, or in the parish in which it appears by the inventory, his principal effects are, if he have effects in different parishes.

"In the parish in which the deceased has died, if he had no fixed residence, nor any immovable effects within this State, at the time of his death."

In both articles the court of the domicile or residence of the deceased has jurisdiction of succession proceedings if there is a residence or domicile within the state. Here by the allegations of the petition there was no fixed domicile in the parish of Jefferson, so we may immediately pass to the second test

which is to be resorted to—the ownership of immovable or landed property.

The petition shows that there was no immovable or landed property belonging to the decedent. Though the words in the article of the Civil Code that if there is no domicile or residence the succession may be opened "in the parish in which it appears by the inventory, his principal effects are, if he have effects in different parishes," may give rise to the belief that the succession may be opened where movable effects are located, such belief must be immediately dispelled upon reading the last paragraph of the article of the Civil Code which shows that the effects referred to are immovable effects only. Furthermore, any doubt on the subject immediately vanishes when reference is had to article 929 of the Code of Practice, which plainly shows that the effects referred to are "landed" property. The decisions of the Supreme Court on the subject settle the matter definitely. We quote from Randolph v. Kraft, 128 La. 743, 55 So. 340, 342, in which the court said: "Under article 935 of the Civil Code, it might be argued that movables, being covered by the general term 'effects,' are to be considered where the deceased left property in several parishes. But, under article 929 of the Code of Practice, movables are excluded by necessary implication."

We refer to this merely because of the possibility that it may be felt that, since the proceeds of the insurance policies were deposited by the insurance company in the parish of Jefferson, this gave to that court jurisdiction. As a matter of fact, the policies, as it is made to appear, were held in the parish of Orleans when the succession was opened.

█ Therefore, since it appears from the petition that there was no fixed residence or domicile, and that there was no immovable property, the only parish in which the succession could be legally administered was and is the parish in which Bibbins died. This parish, according to the petition of Lydia Harris herself, is the parish of Orleans.

Since the succession could be legally opened only in the parish of Orleans, the proceeding in the parish of Jefferson was an absolute nullity.

In Succession of Franklin et ux., 164 La. 654, 114 So. 583, the Supreme Court said: "It is quite true that an ex parte judgment of a court of competent jurisdiction, recognizing heirs and sending them into possession, though not conclusive, is yet prima facie evidence of their right. Taylor v. Williams, 162 La. 92, 96, 110 So. 100. But the court must have jurisdiction, and where the deceased was domiciled in the state the only court having jurisdiction over his succession is the court of the parish in which he had his domicile. R. C. C. art. 935; C. P. art. 929. A decree of any other court opening his succession and sending heirs into possession or appointing an administrator is null. Taylor v. Williams, supra."

In Howell v. Kretz, 15 La. App. 454, 131 So. 204, 205, we find the following language from the Court of Appeal for the Second Circuit: "Having concluded that the residence of the decedent, and certainly her domicile by reason of her marriage to the plaintiff, was in the city of New Orleans, the civil district court of Orleans parish was the court vested with jurisdiction over her succession. Civil Code, art. 935. It therefore follows that the court in East Baton Rouge parish had no jurisdiction ratione materiæ when it acted in the proceedings instituted there at the instigation of Belle Kretz, and the judgment rendered which placed her in possession of the property of the estate was an absolute nullity."

The court further said: "Such judgment being a nullity, the situation was the same as if none would have ever been rendered or ever existed. Alter v. Pickett, 24 La. Ann. 513. It is subject to attack by any one having an adverse interest at any time and anywhere, and the latter is not forced to a direct action to have its nullity declared. Decuir v. Decuir, 105 La. 481, 29 So. 932. In citing this last case in State v. Nicolosi, 128 La. 836, at page 846, 55 So. 475, 478, the court said:

"'And, so far as nullity resulting from absence of jurisdiction is concerned, why that is a matter which in the words of this court in the case of Decuir v. Decuir, 105 La. 485, 29 So. 932, 934, "may be invoked by any one at any time and anywhere."'"

In Flanagan v. Land Development Company, 145 La. 843, 83 So. 39, 40, we find the following: "The first question to be disposed of herein is that of jurisdiction in the court below; for, if it was without jurisdiction to appoint the plaintiff administrator in the first instance, or later as dative testamentary executor, the entire proceedings by which he attempted to acquire the capacity to represent the estate of deceased were null, and may be attacked at any time and under all circumstances. R. C. L. p. 74 et seq. (vol. 11) verbo. Executors and Administrators." See, also, Carter v. Cambrice et al., 1 La. App. 156, and the cases therein cited.

The appointment of Lydia Harris as administratrix was an absolute nullity, and, since it was a nullity, the account filed by her could not be legally approved, and the judgment homologating it, even if there were not at least two other reasons, would have to be set aside.

██ The other reasons are the following: First, that the only proof in the record in support of the correctness of the account is an affidavit, and this not by the administratrix, but by her attorney; and second, and

most striking of all the irregularities is the glaring inconsistency of Lydia Harris in claiming that she as an ordinary creditor is entitled to the entire fund, although she strenuously contended in the motion to dismiss the appeals that, because the appellant is a creditor, it could not be heard to complain, since it, as a creditor, lacked any interest in this same fund.

It will be remembered that, in the motion to dismiss, the contention made on behalf of appellee was that, because of Act No. 88 of 1916, in which creditors are not permitted to claim any portion of the proceeds of life insurance policies, the present appellant could not be heard to inquire into the distribution of such proceeds. How then could appellee and her attorney claim that they themselves as creditors are entitled to the proceeds?

In view of the authorities set forth and of others to which we shall now refer, it is difficult to understand the reasons which prompted the distribution of the said funds.

Conceding that Lydia Harris paid the premiums, as she says she did, she is simply a creditor of the estate, and as a creditor cannot claim any portion of the insurance money. The attorney likewise is a creditor of the estate.

In the Succession of Morris, 10 La. App. 650, 121 So. 358, we held that, even though a person may pay premiums on a policy of insurance on the life of some one else, and even though the person who pays the premiums may have possession of the policy, unless there is an assignment of the policy, no claim can be made to the proceeds thereof, and the person who has paid the premiums is relegated to the status of an ordinary creditor.

That there is an allegation that there are no heirs is of no importance, and does not entitle creditors to claim the insurance fund.

In Succession of Erwin, 169 La. 877, 126 So. 223, 224, the Supreme Court said:

"Another contention made by appellants is that the fund should be paid over to the creditors because the heirs have not specially claimed the insurance money.

"The answer to this contention involves the interpretation of Act No. 189 of 1914, as amended by Act No. 88 of 1916. If under the statutes referred to the insurance money belongs to the heirs and is not liable for the debts of the insured, then the creditors have no interest in urging the failure of the heirs to claim the insurance. If the creditors have no claim on the fund, they certainly cannot control the disposition of the fund.

"The statute in question provides that the proceeds or avails or dividends of all life, including fraternal and co-operative, health and accident insurance, shall be exempt from all liability for any debt, except for a debt se-

cured by a pledge of policy or any rights under such policy that may have been assigned, or any advance payments made on or against such policy.

"There is no ambiguity in the language used, and scarcely any room for interpretation.

"The plain meaning is that the avails or proceeds of an insurance policy are exempt from the debts of the insured—cannot be made subject to the payment of his debts. In other words, the creditors have no claim whatever on the insurance, whether the heirs make claim or whether there are no heirs."

The judgment appointing Lydia Harris administratrix' is annulled, avoided, and reversed, and the petition of letters for administration is dismissed at the cost of petitioner.

The judgment homologating the account is annulled, avoided, and reversed, and the petition praying for homologation thereof is dismissed, at the cost of petitioner.

Motion to dismiss denied; judgment reversed.

---

*Rehearing denied March 2, 1934.